# FOR PUBLICATION

FILED & ENTERED

OCT 31 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Ogier        DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>LAUREL GREENSTEIN,<br><br>                Debtor. | Case No.: 1:12-bk-15099-MB<br><br>Chapter 7 |
| LAUREL GREENSTEIN,<br><br>                Plaintiff,<br><br>            v.<br><br>WELLS FARGO BANK, N.A.; ROGER LIPKIS; STEVEN WOLVEK; DEAN REEVES; MARISOL NAGATA; ROBERT LITTLE; ROBERT BAILEY; JOHN STUMPF; ROBERT LINDAMAN; MARTY A. DURAN; PATRICIAN M. DURAN; THE DURAN FAMILY TRUST; DOES 1 THROUGH 10,<br><br>                Defendants. | Adv. Case No.: 1:15-ap-01220-MB<br><br>**AMENDED CONSOLIDATED MEMORANDUM OF DECISION:**<br><br>**(1) DENYING MOTION TO SET ASIDE FORECLOSURE SALE IN VIOLATION OF AUTOMATIC STAY;**<br>**(2) GRANTING MOTIONS TO DISMISS ADVERSARY PROCEEDING WITH PREJUDICE AS TO ALL DEFENDANTS;**<br>**(3) DENYING AS MOOT SPECIAL MOTION TO STRIKE CERTAIN CLAIMS; AND**<br>**(4) DENYING REQUEST FOR VEXATIOUS LITIGANT RESTRICTIONS ON PLAINTIFF** |

1

**TABLE OF CONTENTS**

I.    INTRODUCTION ..............................................................................................1

II.    BACKGROUND ...............................................................................................5
    A.  The Lipkis Bankruptcy Case and the In Rem Order............................................5
    B.  Debtor's Bankruptcy Case And Her Multiple Attempts To Vacate The
        In Rem Order And/Or Seek Relief Against Defendants.......................................8
        1.  The Lipkis Motions ...............................................................................8
        2.  The Adversary Proceedings ...................................................................9
        3.  The Second State Court Complaint ......................................................13
        4.  The Set Aside Motion ..........................................................................14
        5.  Debtor's Appeal and the BAP Memorandum .......................................16

III.    JURISDICTION .............................................................................................17

IV.    SET ASIDE MOTION .....................................................................................17
    A.  Claim Preclusion...............................................................................................17
    B.  Issue Preclusion ...............................................................................................21
    C.  Validity of the In Rem Order............................................................................22
        1.  Section 362(d)(4) ................................................................................23
        2.  Jurisdiction..........................................................................................26
        3.  Due Process .........................................................................................29
        4.  Finality of In Rem Order/No Collateral Attack ..................................35
    D.  No Stay Violation .............................................................................................35

V.    MOTIONS TO DISMISS.................................................................................36
    A.  Wells Fargo Defendants ...................................................................................38
        1.  Claim Preclusion.................................................................................38
        2.  Issue Preclusion ..................................................................................40
        3.  Claim Specific Analysis ......................................................................40
            a.  Stay Violation Claim ...............................................................40
            b.  Fraud and Related Claims ........................................................40
                (1) Fraud/Deceit ..................................................................41
                (2) Constructive Fraud..........................................................44
                (3) Fraud on the Court, Perjury and False Evidence ...........45
            c.  Emotional Distress and Personal Injury ...................................54
            d.  Quiet Title ...............................................................................55
    B.  Nagata and Wolvek...........................................................................................55
    C.  Duran Defendants .............................................................................................56

VI.    MOTION TO STRIKE AND SANCTIONS......................................................57

VII.    VEXATIOUS LITIGANT REQUEST...............................................................58

VIII.    CONCLUSION................................................................................................63

-i-

# I.       INTRODUCTION

Laurel Greenstein, chapter 7 debtor pro se, contends that her home was wrongfully foreclosed on by Wells Fargo Bank, N.A. ("Wells Fargo") in violation of the automatic stay in her case.  Greenstein seeks redress for this alleged violation of the automatic stay pursuant to the instant *Motion to Set Aside Sale of Property Made in Violation of Automatic Stay* (the "Set Aside Motion"), Case Dkt. 71, and a series of adversary proceedings, the third of which remains pending. Adv. Dkt. 30.[1]

At the time of the foreclosure sale, the automatic stay in Greenstein's case was in effect generally, but Greenstein's home was the subject of an order entered pursuant to Bankruptcy Code section 362(d)(4), exempting her home from the protection of the automatic stay.  A court may enter such an "in rem" order when it determines that a bankruptcy case is being used as part of a scheme to hinder, delay or defraud a secured creditor with an interest in real property.  11 U.S.C. § 362(d)(4).  If properly recorded, the order exempts the subject real property from the protection of the automatic stay in any subsequent bankruptcy case, for a period of two years—subject to the right of the debtor in such case to seek relief from the order based on changed circumstances or for cause shown.  *Id.*

Approximately six months prior to the foreclosure of Greenstein's home, the Court entered an order under section 362(d)(4) (the "In Rem Order"), in the chapter 13 case of an entirely unrelated debtor, Roger Lipkis.  Wells Fargo sought this relief in the Lipkis case based on its discovery of a grant deed purporting to transfer an interest in Greenstein's home to Lipkis, without the consent of Wells Fargo.  Disclaiming any interest in Greenstein's home, Lipkis (through his attorney) stipulated to Wells Fargo's request for an order for relief from the automatic stay under

---

[1] All further references to "Case Dkt." refer to entries on the docket of Bankruptcy Case No. 1:12-bk-15099-MB, *In re Laurel Belkin Greenstein*.  All further references to "Adv. Dkt." refer to entries on the docket of Adversary Proceeding No. 1:15-ap-01229-MB, *Greenstein v. Wells Fargo et al*.  Where references are to entries on the dockets of other cases or adversary proceedings, they are noted accordingly.

**AMENDED MEMORANDUM OF DECISION**

1 section 362(d)(4) and the Court entered the In Rem Order.  Wells Fargo thereafter recorded the

2 order in accordance with section 362(d)(4).

3      The entry and recordation of the In Rem Order should be dispositive of Greenstein's

4 contention that Wells Fargo violated the automatic stay in her own bankruptcy case when Wells

5 Fargo foreclosed.  If her home was not protected by the stay, there could be no violation of the stay

6 resulting from the foreclosure.

7      In her Set Aside Motion, Greenstein argues that the Court should disregard the In Rem

8 Order and deem the foreclosure sale void.  First, Greenstein argues that the In Rem Order is void

9 for lack of jurisdiction.  Specifically, Greenstein argues that the deed purporting to transfer an

10 interest in her property to Lipkis was a forgery, that no interest in property was actually transferred

11 to Lipkis (or his estate) and, therefore, that the Court did not have jurisdiction to enter the In Rem

12 Order.

13      Second, Greenstein argues that entry of the In Rem Order violated her due process rights

14 because she did not receive notice and an opportunity to be heard on the stipulation pursuant to

15 which Wells Fargo and Lipkis consented to entry of the In Rem Order.  Greenstein contends that if

16 she had been given notice, she could have opposed the relief affecting her property, preserved the

17 benefit of the automatic stay in her subsequent bankruptcy case, and prevented the foreclosure of

18 her home.

19      Without specifically addressing these issues, the prior bankruptcy judge assigned to this

20 case, denied the Set Aside Motion on the grounds of claim preclusion, i.e., that he had already

21 denied the same claim for relief in a prior proceeding.  At the time of this ruling, the Court had

22 granted several motions to dismiss various parties from adversary complaints filed by Greenstein.

23 But in denying the Set Aside Motion, the Court did not identify which of its prior rulings

24 constituted a final judgment precluding relief on the Set Aside Motion.

25      Greenstein appealed the Court's denial of the Set Aside Motion to the Ninth Circuit

26 Bankruptcy Appellate Panel ("BAP").  The BAP vacated the order and remanded the matter to this

27 Court for further proceedings.  *See* Case Dkt. 137; BAP Case No. 14-1101, Dkt. 62 (hereinafter, the

28 "BAP Memorandum").  The BAP found that the Court's failure to make specific findings made it

2

**AMENDED MEMORANDUM OF DECISION**

1  difficult to determine whether the requirements of claim preclusion had been satisfied.  In light of

2  this conclusion, the BAP did not find it necessary to address Greenstein's arguments regarding the

3  validity of the In Rem Order.

4         Following remand, the Court heard argument from the parties on all of the issues raised by

5  the BAP Memorandum in respect of the Set Aside Motion, including the validity of the In Rem

6  Order.  In conjunction with these post-remand hearings, the Court also heard argument on separate

7  motions to dismiss (the "Motions to Dismiss") filed by four different groups of defendants in the

8  above-captioned adversary proceeding, Adv. Dkt. 32,[2] 34,[3] 37,[4] 39,[5] and a special motion to strike

9  and award sanctions filed by certain of the defendants (the "Motion to Strike"), Adv. Dkt. 35.  One

10 of the motions to dismiss also contained a request for a vexatious litigant injunction preventing

11 Greenstein from commencing future litigation in the Court, without first obtaining leave of court.

12 (the "Vexatious Litigant Request").  *See* Adv. Dkt. 32.

13        In some significant respects, the issues in these adversaries are related to those in the Set

14 Aside Motion.  In the interests of economy, the Court sets forth its findings of fact and conclusions

15 of law on the Set Aside Motion, the Motions to Dismiss, the Motion to Strike, and the Vexatious

16 Litigant Request in this consolidated memorandum.

17        After reviewing the record, the Court concludes that it should not apply the doctrine of

18 claim preclusion to the Set Aside Motion.  As discussed in greater detail below, the Court finds that

19 there has not yet been a final judgment on the merits of the one and only claim asserted in the Set

20 Aside Motion against Wells Fargo, i.e., that the In Rem Order is invalid and the foreclosure of the

21 Property by Wells Fargo is therefore void as a violation of the automatic stay.  Furthermore, the

22

23

---

24 [2] Filed by Defendant Steven A. Wolvek ("Wolvek").

25 [3] Filed by Defendants Wells Fargo Bank, N.A., Dean Reeves, Robert Little, Robert Bailey, and
   John Stumpf (collectively, the "Wells Fargo Defendants").

26 [4] Filed by Defendants Marty A. Duran, Patricia M. Duran, and the Duran Family Trust
   (collectively, the "Duran Defendants").

27 [5] Filed by Defendant Marisol Nagata ("Nagata").

28

1    Court rejects the argument, asserted on remand by Wells Fargo, that the Set Aside Motion should

2    be denied under the doctrine of issue preclusion.

3         The Court concludes, however, that the Set Aside Motion should be denied on the merits.

4    The Court has carefully considered Greenstein's arguments and finds they are without merit.  First,

5    even if the Lipkis Deed were proven to be a forgery, as Greenstein insists, the Court was not

6    without *jurisdiction* in the Lipkis case to consider and act upon the parties' stipulation for relief

7    under Bankruptcy Code section 362(d)(4).  The existence of the Lipkis Deed—whatever its

8    provenance—gave the Court an arguable basis for jurisdiction to grant section 362(d)(4) relief

9    against the property.  Only a "total want of jurisdiction" would render the In Rem Order void, and

10   that is not the case here.

11        Second, even though Greenstein, as the property owner, should have received notice of the

12   proposed In Rem Order and an opportunity to be heard prior to its entry, the failure of the parties to

13   provide such notice did not constitute a denial of due process under the circumstances.  Under the

14   unique provisions of Bankruptcy Code section 362(d)(4), the owner of property subject to an in

15   rem order entered in a prior case may seek relief from that order in any future bankruptcy case she

16   elects to file, based on changed circumstances or cause shown.

17        Here, Greenstein received adequate notice of the In Rem Order after its entry to enable her

18   to seek relief from that order in her own bankruptcy case, and obtain the protection of the automatic

19   stay for the Property.  She did not timely avail herself of that opportunity.  By the time she

20   commenced the first of her efforts, it was too late.  Wells Fargo had already foreclosed.  At the time

21   it did so, the automatic stay did not apply to the Property pursuant to the In Rem Order, and Wells

22   Fargo could not have violated the automatic stay.  Moreover, the In Rem Order is a final order that

23   may not be collaterally attacked.

24        Greenstein's adversary proceeding fairs no better.  For these and other reasons discussed

25   below, the Motions to Dismiss must be granted and Greenstein's latest adversary proceeding must

26   be dismissed with prejudice.  The Motion to Strike will be denied as moot, and the Vexatious

27   Litigant Request will be denied for lack of cause.

28

4

**AMENDED MEMORANDUM OF DECISION**

## II.    BACKGROUND

Much of the relevant factual and procedural background is summarized in the BAP Memorandum.  The BAP's discussion of that background is extensively quoted below and supplemented where the Court believes necessary and appropriate to explain the basis of its analysis in this Memorandum.

### A.    The Lipkis Bankruptcy Case and the In Rem Order.

In 2007, Debtor obtained a $510,000 loan from World Savings Bank, predecessor to appellee Wells Fargo Bank, N.A., secured by a deed of trust recorded against her residence in Woodland Hills, California ("Property").  Debtor later defaulted and a notice of default was recorded in July 2011.  A notice of sale was recorded on October 26, 2011, with a trustee's sale of the Property scheduled for November 15, 2011.  Meanwhile, Debtor sued Wells Fargo and others in state court with respect to the pending foreclosure in October 2011.[6]  On November 22, 2011, the state court issued a temporary restraining order enjoining Wells Fargo from selling the Property at foreclosure pending a hearing on the issuance of a preliminary injunction scheduled for January 9, 2012.

On November 10, 2011, five days before the scheduled sale, a grant deed appeared to be recorded transferring title to the Property from Debtor to Roger Lipkis ("Lipkis Deed").  On November 18, 2011, Lipkis filed a chapter 13

---

[6]   The complaint in this state court action ("First State Complaint"), California Superior Court for Los Angeles County, Case No. LC-095160, is in the post-remand record at Adv. Dkt. 36-1 at 35-46.  The First State Complaint ultimately was dismissed with prejudice.  *Id.* at 48-50.  Although the copy of the order dismissing the First State Complaint at Adv. Dkt. 36-1 at 48-50 does not include a signature, it appears to have been lodged via facsimile on November 30, 2012, and entered on the docket on December 6, 2012.  *See id.* at 48.  This is consistent with the California Superior Court for Los Angeles County's online docket, of which the Court takes judicial notice, indicating Wells Fargo's demurrer was sustained without leave to amend on August 1, 2012, and the First State Complaint was dismissed with prejudice on December 6, 2012.  *See* Case Summary, California Superior Court for Los Angeles County, http://www.lacourt.org/casesummary/ui/index.aspx?case-type=civil.  The Court also takes judicial notice that (i) there is no notice of appeal reflected on the state court docket, *see id.*, and (ii) there is no appellate record associated with the First State Complaint with the California Court of Appeal for the Second District, *see* California Courts, Appellate Courts Case Information, http://appellatecases.courtinfo.ca.gov/search.cfm?dist=2.

**AMENDED MEMORANDUM OF DECISION**

1    bankruptcy case.  Lipkis did not claim an interest in the Property.  His case was

2    assigned to Judge Tighe.

3        In February 2012, Debtor sent an email to counsel for Wells Fargo in the

4    state court action informing him that the Lipkis Deed was a fake and appeared to be

5    a "cut and paste" job.  She denied knowing Lipkis or executing the Lipkis Deed. In

6    actuality, the recording number on the Lipkis Deed—20111253614—is identified

7    with a tax lien document recorded on September 15, 2011 (two months before the

8    Lipkis Deed), against an unrelated third party.

9        It later became clear that the Property had been transferred to Lipkis without

10   his knowledge or consent or the consent of Wells Fargo prior to him filing

11   bankruptcy.  On March 7, 2012, counsel for Lipkis and Wells Fargo filed a

12   stipulation to terminate the automatic stay with respect to the Property under

13   § 362(d)(1).  The parties further agreed to in rem relief under § 362(d)(4).

14       On March 19, 2012, the bankruptcy court entered an order in the Lipkis case

15   granting the stipulated motion for relief from stay under § 362(d)(1) and (d)(4) ("In

16   Rem Order").  The In Rem Order provides, in relevant part:

17       3. The motion is granted under:

18       ☒ 11 U.S.C. § 362(d)(1)

19       ☒ 11 U.S.C. § 362(d)(4) (See attached continuation page)

20       4. As to Movant, its successors, transferees and assigns, the stay of
     11 U.S.C. § 362(a) is:

21

22       a. ☒ Terminated as to Debtor and Debtor's bankruptcy estate.

23       5. ☒ Movant may enforce its remedies to foreclose upon and obtain
     possession of the Property in accordance with applicable nonbankruptcy law.

24       9. ☒ The filing of the petition was part of a scheme to delay, hinder
     and defraud creditors that involved either:

25

26       ☒ transfer of all or part ownership of, or other interest in, the
     Property without the consent of the secured creditor or court approval. (see
     attached continuation page).

27

28       If recorded in compliance with applicable state law governing notices of
     interests or liens in the Property, this Order is binding and effective under

6

§ 362(d)(4)(A) and (B) in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of the entry of this Order, except that a debtor in a subsequent bankruptcy case may move for relief from this Order based upon changed circumstances or for good cause shown, after notice and a hearing.  Any federal, state or local government unit that accepts notices of interests or liens in  real property shall accept any certified copy of this Order for indexing and recording.

The "attached continuation page" in the In Rem Order provides, in relevant part:

a. That [Lipkis] asserts no interest in the [Property].

b. That an interest in the Property was impermissibly transferred to [Lipkis] without the knowledge of [Lipkis].  Without [Lipkis's] consent, his Chapter 13 bankruptcy case proceeding is being used for an improper purpose as part of a scheme to delay, hinder and defraud creditors that involved a transfer of all or part ownership of, or interest in the [Property] without the consent of this Movant or court approval.

…

A certified copy of the In Rem Order was recorded on March 28, 2012.  A new notice of sale for the Property was recorded on May 14, 2012, with a trustee's sale scheduled for June 4, 2012.

BAP Memorandum at 2-5.

In the BAP Memorandum, the BAP stated that nothing in the record indicated that "Debtor was given notice of the stipulation or any motion to approve it or of the entry of the order."  BAP Memorandum at 5.  Following the BAP's remand, no party has challenged the BAP's conclusion that Greenstein was not given notice of a motion seeking relief under Bankruptcy Code section 362(d)(4) or the stipulation between Wells Fargo and Lipkis, *prior* to entry of the In Rem Order. However, in connection with the motion to dismiss the pending adversary proceeding, Wells Fargo has brought to the Court's attention Greenstein's own admissions regarding her receipt of notice of the In Rem Order *following* its entry.  *See* Adv. Dkt. 72-1 at 5-6 (Supplemental Request for Judicial Notice).

Specifically, in all of her motions seeking relief in the Lipkis case from the In Rem Order (discussed further below), Greenstein acknowledged that she learned of the In Rem Order on May 31, 2012, and that she actually received a copy of the In Rem Order on June 1, 2012.  *See* Case No. 1:11-bk-23430-MT, Case Dkt. 43 at 4, 12-17, Dkt. 44 at 4-5, 13-21, Dkt. 45 at 4, 11-20; *see also* Adv. Dkt. 72-1 at 5-6.  Greenstein also stated that she "thought it would not apply to her

7

AMENDED MEMORANDUM OF DECISION

1  bankruptcy" because (i) the order was filed in the Lipkis case, and (ii) the foreclosure sale was

2  delayed for a period of time, apparently because the chapter 7 trustee had, for a period of time,

3  asserted the right to sell the house for the benefit of Greenstein's estate.  *See* Case No. 1:11-bk-

4  23430-MT, Case Dkt. 44 at 4-5; *see also* Adv. Dkt. 72-1 at 5-6.

**B.     Debtor's Bankruptcy Case And Her Multiple Attempts To Vacate The In Rem Order And/Or Seek Relief Against Defendants.**

**1.     The Lipkis Motions**

8          Debtor filed a chapter 7 bankruptcy case on May 31, 2012, five days before

9  the rescheduled foreclosure sale of the Property.  Her case was assigned to Judge

10  Ahart.  Debtor identified an interest in the Property valued at $975,000, subject to

11  Wells Fargo's secured claim of $575,000.  Debtor claimed a homestead exemption

12  of $150,000.

13          A trustee's sale of the Property proceeded on July 11, 2012.  Wells Fargo

14  was the successful bidder with a credit bid of $563,411.26.  A trustee's deed was

15  recorded on November 13, 2012.

16          Debtor, pro se, proceeded thereafter to file three post-sale motions in the

17  Lipkis bankruptcy case attempting to obtain relief from the In Rem Order.  On

18  August 7, 2012, Debtor filed a "Motion for Hearing to Reverse Order Granting

19  Motion for Relief Under 11 U.S.C. § 362 (Real Property)."  Debtor alleged that the

20  facts presented in the stipulation by counsel for Lipkis and Wells Fargo were false,

21  and that Wells Fargo had used the In Rem Order to bypass the automatic stay in her

22  bankruptcy case and sell the Property.  Debtor alleged that the Lipkis Deed was a

23  fake and that she never transferred the Property to Lipkis, whom she did not know.

24  Debtor further alleged that while Trustee[7] was not challenging the July 11 sale, she

25  had previously stated in writing to Wells Fargo and Debtor that the In Rem Order

27  [7]  The "Trustee" referred to in the BAP Memorandum is chapter 7 trustee Nancy J. Zamora.

**AMENDED MEMORANDUM OF DECISION**

was improper.  Debtor presented no evidence to support Trustee's alleged written statement.

Before the August 7 motion could be heard, Debtor filed an "Amended Motion for Hearing to Reverse Order Granting Motion for Relief Under 11 U.S.C. § 362 (Real Property)" on August 14, 2012.  This motion was identical to the first motion, except for the inclusion of a declaration from Debtor.  Debtor said she knew who did the "cut and paste" job to create the fake Lipkis Deed and get it to Wells Fargo, but she could not prove it.  In any event, she denied any involvement.  Debtor stated that the notary who allegedly signed the Lipkis Deed was willing to testify that she never notarized the document and that she had no record of it in her notary book.

Two days later on August 16, 2012, Debtor filed a third motion—"Motion to set hearing Re contempt."  In this motion, Debtor requested that the bankruptcy court find counsel for Lipkis and Wells Fargo in contempt for their alleged willful misrepresentations made to the court in their stipulation for stay relief in the Lipkis bankruptcy case.

### 2.    The Adversary Proceedings

Four days after filing the last of her three motions in the Lipkis bankruptcy case, Debtor in her own bankruptcy case filed an adversary proceeding against Wells Fargo, its counsel and counsel for Lipkis, Adv. No. 12-1300 ("First Adversary Proceeding").  Although her complaint failed to set forth any precise claim for relief, Debtor attacked the validity of the In Rem Order and contended that the July 11 sale was void because it violated the automatic stay in effect in her case.  Debtor requested that title to the Property be restored to her and that she be awarded monetary damages for the alleged stay violation.

Wells Fargo moved to dismiss the First Adversary Proceeding on September 24, 2012, asserting several theories as to why the complaint should be dismissed, including that Debtor lacked standing to bring the action.  Wells Fargo argued that

9

1    the claims asserted by Debtor arose out of an alleged prepetition action and were

2    property of the bankruptcy estate.  Because Debtor had not scheduled these alleged

3    claims and/or because Trustee had not yet abandoned them, Wells Fargo argued that

4    Debtor lacked standing to pursue them on her own behalf.  A hearing on Wells

5    Fargo's motion to dismiss was scheduled for October 23, 2012.  Meanwhile, on

6    October 4, 2012, Trustee filed her notice of intent to abandon the Property as

7    burdensome and of inconsequential value to the estate.  No objections were filed.

8        The hearing on Wells Fargo's motion to dismiss the First Adversary

9    Proceeding went forward on October 23, 2012.  We do not have a transcript, but

10    because Debtor filed another adversary proceeding the next day, we assume the

11    bankruptcy court announced its intent to dismiss the First Adversary Proceeding at

12    that hearing.

13        The court entered an order on November 1, 2012, granting Wells Fargo's

14    motion to dismiss without leave to amend on the basis that "Debtor has no

15    standing."  The First Adversary Proceeding was closed shortly thereafter.  Debtor

16    did not appeal the dismissal of the First Adversary Proceeding.

17        Before the First Adversary Proceeding was dismissed, Debtor filed a second

18    adversary proceeding against the same defendants on October 24, 2012, Adv. No.

19    12-1379 ("Second Adversary Proceeding").  The complaint in the Second Adversary

20    Proceeding was virtually identical to the first one, except Debtor asserted that she

21    now had standing to pursue the action against defendants because Trustee had

22    abandoned the Property.  All three defendants filed separate motions to dismiss

23    under Civil Rule 12(b)(6).  Wells Fargo filed its motion to dismiss on November 26,

24    2012.  It contended that Debtor still lacked standing to pursue the action despite

25    Trustee's abandonment of the Property, because her purported claims arose out of an

26    alleged prepetition action respecting the loan for the Property and those claims had

27    not been abandoned by Trustee.

28

**AMENDED MEMORANDUM OF DECISION**

On December 4, 2012, Judge Tighe ruled on Debtor's post-sale motions filed in Lipkis's bankruptcy case, denying all three. Judge Tighe noted that Debtor had filed the Second Adversary Proceeding on October 24, 2012, in her own case which stated the same allegations of fact that were the basis for the three motions. Judge Tighe opined that the Second Adversary Proceeding, rather than the post-sale motions, was the proper action for Debtor to address her complaints. Debtor did not appeal the orders.

On December 19, 2012, the bankruptcy court held a hearing on two of the defendants' motions to dismiss the Second Adversary Proceeding. Wells Fargo's motion was not scheduled to be heard until January 2, 2013, but it appeared at the December 19 hearing. As for the other two defendants, the bankruptcy court entered two orders dismissing the Second Adversary Proceeding without leave to amend on December 26 and 27, 2012. Before Wells Fargo's motion was heard, Debtor voluntarily dismissed the Second Adversary Proceeding without prejudice on December 28, 2012. The Second Adversary Proceeding was closed July 24, 2013.

BAP Memorandum at 5-9.

A hearing on Wells Fargo's motion to dismiss the Second Adversary Proceeding went forward on January 2, 2013, but Debtor failed to appear. Judge Ahart announced at that hearing that he would grant Wells Fargo's motion and dismiss the Second Adversary Proceeding with prejudice, not knowing that Debtor had already dismissed it without prejudice several days prior. For reasons unknown, and without ever conducting a hearing, Judge Ahart then entered an order granting Wells Fargo's motion to dismiss and dismissing the Second Adversary Proceeding with prejudice on February 7, 2014, even though the proceeding had already been dismissed and closed on July 24, 2013. The order did not set forth the reasons for the dismissal. Debtor tried to appeal the February 7 dismissal order on August 11, 2014, and at the same time filed a motion to reconsider in the bankruptcy court. We

**AMENDED MEMORANDUM OF DECISION**

1    dismissed the appeal as untimely on September 29, 2014. Debtor's reconsideration

2    motion went forward.

3         On July 8, 2015, Debtor informed the Panel of recent developments

4    respecting her motion to reconsider the dismissal order entered on February 7, 2014.

5    On June 25, 2015, Judge Barash (to whom the adversary proceeding had been

6    assigned) entered an order allowing supplemental briefing on the matter, realizing

7    the court's potential mistake of dismissing the Second Adversary Proceeding with

8    prejudice when Debtor had already dismissed it without prejudice. The bankruptcy

9    court scheduled a hearing for August 19, 2015. On September 1, 2015, the

10   bankruptcy court granted Debtor's motion and vacated the February 7, 2014 order

11   dismissing the Second Adversary Proceeding. Debtor subsequently filed a third

12   adversary proceeding, 1:15-ap-01220-MB. On December 15, 2015, the bankruptcy

13   court dismissed the third adversary proceeding with leave to amend prior to

14   February 5, 2016.[8]

15   BAP Memorandum at 9-10 n.9.

16        On December 28, 2015, Greenstein filed a motion seeking a one-month extension of the

17   deadline for filing her amended complaint in the third adversary proceeding ("Third Adversary

18   Proceeding"), which is the currently pending proceeding. Adv. Dkt. 20. On January 28, 2016, the

19   Court held a hearing on the motion, and thereafter entered an order extending Greenstein's deadline

20   to file an amended complaint from February 5, 2016 to February 19, 2016. Adv. Dkt. 28. On

21   February 19, 2016, Greenstein filed her first amended complaint in the Third Adversary Proceeding

22   ("First Amended Complaint" or "FAC"), which is the operative complaint before the Court. Adv.

23   Dkt. 30.[9] The Defendants thereafter filed the motions to dismiss that presently are before the

24   Court.

25   _____

26   [8]  The detailed order dismissing the initial complaint in the Third Adversary Proceeding is at Adv.
     Dkt. 13.

27   [9]  In one of her responses to the pending motions to dismiss, Greenstein attaches a proposed
     second amended complaint in the Third Adversary Proceeding ("Second Amended Complaint"),

28                                                                              (Continued...)

3.    **The Second State Court Complaint.**

On August 15, 2013, Greenstein filed a second amended complaint in the California Superior Court, California Superior Court for Los Angeles County, Case No. LC-099392 (the "Second State Complaint").  Adv. Dkt. 36 at Ex. L.  The Second State Complaint asserted causes of action for intentional infliction of emotional distress, fraud/deceit, breach of contract, conspiracy and slander of title against, among others: Wells Fargo, Marisol Nagata (who represented Wells Fargo in the Lipkis case), and Steven Wolvek (who represented the debtor in the Lipkis case).

The gravamen of the Second State Complaint, like Greenstein's complaints in the adversary proceedings in this Court, was that Wells Fargo conspired to fabricate the Lipkis Deed and use it to deprive her of her rights, Nagata and Wolvek made false representations to the Court regarding the Lipkis Deed in order to obtain the In Rem Order, the In Rem Order deprived Greenstein of the protections of the automatic stay in her bankruptcy case, and, as a consequence, her rights in the Property were lost to foreclosure. The complaint also alleged that Wells Fargo and its representatives breached various promises they made regarding its intention to foreclose on the Property.

On September 19, 2013, Wells Fargo filed its demurrer to the Second State Court Complaint, *see* Adv. Dkt. 89-1 at Ex. 1, in which the other Defendants joined.  *See* Adv. Dkt. 36, Ex. M.  On December 20, 2013, the California Superior Court filed its Notice of Ruling, granting the demurrers without leave to amend.  *See* Adv. Dkt. 36, Ex. M.  It appears Greenstein did not appeal the dismissal of the Second State Complaint.[10]

_____

(...Continued)

purporting to correct certain defects in the First Amended Complaint.  *See* Adv. Dkt. 43 at 8-22. Greenstein has not filed a motion seeking leave to file the Second Amended Complaint.

[10]    The Court takes judicial notice that (i) there is no notice of appeal reflected on the state court docket for the Second State Complaint, *see* Case Summary, California Superior Court for Los Angeles County, http://www.lacourt.org/casesummary/ui/index.aspx?casetype=civil, and (ii) there is no appellate record associated with the Second State Complaint with the California Court of Appeal for the Second District, *see* California Courts, Appellate Courts Case Information, http://appellatecases.courtinfo.ca.gov/search.cfm?dist=2.

**AMENDED MEMORANDUM OF DECISION**

**4.    The Set Aside Motion**

Debtor, pro se, filed the [Set Aside Motion] in her bankruptcy case against Wells Fargo (only) on December 27, 2013.  By this time, she had been evicted from the Property.  Essentially, Debtor sought damages for Wells Fargo's alleged willful violation of the automatic stay.  As with her prior motions and adversary complaints, Debtor contended that because Wells Fargo had failed to seek relief from stay in her bankruptcy case, Wells Fargo violated the stay when it foreclosed on the Property on July 11, 2012.  Debtor made no mention of the In Rem Order.

Wells Fargo maintained that it had not violated the automatic stay because the In Rem Order entered and recorded in March 2012 authorized the trustee's sale on July 11, 2012, despite Debtor's bankruptcy filing on May 31, 2012.  Therefore, because the sale did not violate the automatic stay, Wells Fargo argued that no basis existed for setting it aside.

In her reply, Debtor contended that the In Rem Order did not apply in her case because: (1) the Lipkis court had no authority or jurisdiction to make any order relating to the Property; (2) the Property was never part of the Lipkis bankruptcy nor did Lipkis ever claim any interest in it; and (3) Wells Fargo knew months before the sale the Lipkis Deed was a fake and was never recorded.  Debtor further contended that the In Rem Order provided no findings of an intent to hinder, delay or defraud creditors; there was only a stipulation to that by parties she alleged had no authority to make the stipulation.  Debtor contended she had no opportunity to address the allegations raised in support of the In Rem Order.

Prior to the hearing on February 12, 2014, the bankruptcy court issued a tentative ruling sua sponte denying Debtor's motion on the basis of claim preclusion.  The court stated that because it had "previously determined that debtor is unable to void the sale, the debtor cannot do so now via the motion."

At the hearing, Debtor was represented by attorney Lenore Albert ("Albert").  Albert sought clarification from the bankruptcy court as to which order or judgment

14

1    had already determined the issues raised in Debtor's motion.  The court never

2    directly answered Albert's question, but when it noted that Wells Fargo had filed a

3    motion to dismiss the Second Adversary Proceeding, Albert responded that the

4    proceeding was dismissed only as to the other two defendants, not as to Wells

5    Fargo; Debtor dismissed that proceeding without prejudice before Wells Fargo's

6    motion was decided.  Nonetheless, Albert argued that even if the Second Adversary

7    Proceeding had been dismissed as to Wells Fargo under Civil Rule 12(b)(6), such

8    dispositions are not final judgments on the merits.

9           Counsel for Wells Fargo conceded that Wells Fargo had not been dismissed

10    from the Second Adversary Proceeding before Debtor dismissed it without

11    prejudice, but argued that the issue of the validity of the In Rem Order was decided

12    in that proceeding as to the other defendants when they were dismissed.  The

13    bankruptcy court agreed and set forth its oral ruling:

14           THE COURT: Well, you know, I'm going to — first of all, I agree

15           with opposing counsel. I've already ruled on the merits — how do I put this

16           — it's really — you say res judicata.  I haven't used the word res judicata.

17           I've ruled on the particular claims here on the merits.  Okay. So I wouldn't

18           call that — you want to call it collateral estoppel, claim preclusion,

19           whatever, it's there.  It's been done.  She's had her bites at the apple.  Okay.

20           So this — that's why I said what I said in the tentative.  So I believe she is

21           barred from bringing this motion at this point.

22           . . . .

23           So I'm going to stick to my tentative and I'm going to deny the

24           motion and ask opposing counsel to prepare the order.

25    Hr'g Tr. (Feb. 12, 2014) at 8:2-14, 8:19-21.  The order denying Debtor's motion to

26    set aside the sale of the Property entered on March 5, 2014, states only that the

27    motion was "denied."  [A] timely appeal followed.

28    BAP Memorandum at 10-12.

**AMENDED MEMORANDUM OF DECISION**

### 5.    Debtor's Appeal and the BAP Memorandum

As noted above, Greenstein appealed the Court's order denying her motion to set aside the sale of the Property to the BAP.  The appellate panel vacated the order and remanded the matter to this Court for further proceedings.  The BAP concluded that the Court's prior application of claim preclusion was an abuse of discretion because the Court did not make specific findings to support it, including a finding identifying the prior adjudication on which the Court's ruling was premised. BAP Memorandum at 16-21.  Based on this conclusion, the BAP did not "reach the question of whether procedural due process was satisfied when, after Debtor had informed Wells Fargo's counsel that she challenged the validity of the Lipkis Deed, Wells Fargo apparently failed to notice Debtor of the stipulation for in rem relief from stay or its motion for approval of it." *Id.* at 21.

In a separate concurrence, Judge Dunn expressed his agreement with the judgment and rationale of the panel, but suggested that on remand the Court consider an additional issue that the panel did not reach:

> I write this concurrence to state a substantive question that may be even more
> appropriate to address on remand: Can a viable claim for violation of the automatic
> stay of § 362(a) be asserted in light of the existence of the unstayed In Rem Order
> when the foreclosure sale took place on July 11, 2012, and no motion to vacate the
> In Rem Order was filed in the Lipkis case until August 7, 2012 at the earliest, and
> First Adversary Proceeding was not filed in Debtor's own bankruptcy case until later
> in that same month?

*Id.* at 23 (Dunn, J., concurring).

Following remand, the Court held hearings to address the Set Aside Motion and the Dismissal Motions.  The Court has determined that the Set Aside Motion and the Dismissal Motions are now ripe for decision.

**AMENDED MEMORANDUM OF DECISION**

### III.    JURISDICTION

This Court has jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11.  28 U.S.C. § 1334(b).  The Set Aside Motion and the First Amended Complaint arise under the Bankruptcy Code, i.e., are within its "core" jurisdiction.  Both assert in common: (i) the In Rem Order issued against the Property in the Lipkis case, pursuant to Bankruptcy Code section 362(d)(4), was invalid, (ii) the automatic stay under Bankruptcy Code section 362(a) was in effect in Greenstein's case as to the Property at the time Wells Fargo foreclosed, and (iii) the foreclosure was wrongful because it violated the automatic stay under Bankruptcy Code section 362(a) in Greenstein's case.  The First Amended Complaint also asserts Greenstein is entitled to damages from all those involved with obtaining the In Rem Order and violating the stay.  These causes of action all arise under section 362 of title 11.  As such, the Court also has the constitutional authority to enter final judgment.  *See Stern v. Marshall,* 564 U.S. 462, 477 (2011).

To the extent the First Amended Complaint purports to allege causes of action for fraud, constructive fraud, emotional distress and personal injury, quiet title and other claims based on state law, these claims depend—to one degree or another—on the validity of Greenstein's bankruptcy causes of action.  As such, the Court has supplemental jurisdiction over those claims.  *See In re Pegasus Gold Corp.,* 394 F.3d 1189, 1194-95 (9th Cir. 2005) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966)); *In re Caracciolo,* 2006 Bankr. LEXIS 4737, 2006 WL 6602238, at *2, 5 (Bankr. S.D. Cal. July 19, 2006)).  Likewise, the Court has the constitutional authority to enter final judgment on these causes of action because they are factually intertwined and legally dependent on Greenstein's bankruptcy claims.  *See Deitz v. Ford (In re Deitz),* 469 B.R. 11, 17-25 (9th Cir. B.A.P. 2012).

### IV.    SET ASIDE MOTION

**A.    Claim Preclusion**

In the proceedings prior to the BAP appeal, the Court denied the Set Aside Motion on the grounds of claim preclusion.  At the time of this denial, the Court had recently granted several

**AMENDED MEMORANDUM OF DECISION**

1  motions to dismiss parties from related adversary proceedings filed by Greenstein, but did not

2  specifically identify which order was preclusive or why.

3      Claim preclusion, sometimes referred to as res judicata, prohibits relitigation of "any claims

4  that were raised or could have been raised" in a prior action between the same parties or their

5  privies. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001).  The

6  doctrine "serves to promote judicial efficiency by preventing multiple lawsuits and to enable the

7  parties to rely on the finality of adjudications." *Dodd v. Hood River Cty.,* 136 F.3d 1219, 1224-25

8  (9th Cir. 1998).  Claim preclusion bars a plaintiff from relitigating claims adjudicated in a prior

9  judgment, even if the prior decision was wrongly decided.  *See, e.g., Federated Dep't Stores, Inc. v.*

10  *Moitie*, 452 U.S. 394, 398 (1981) ("Nor are the res judicata consequences of a final, unappealed

11  judgment on the merits altered by the fact that the judgment may have been wrong or rested on a

12  legal principle subsequently overruled in another case.").

13      The preclusive effect of a federal court judgment is determined by federal common law.

14  *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).  Under federal law, claim preclusion requires three

15  elements: (1) an identity of claims; (2) a final judgment on the merits; and (3) the same parties or

16  privity between the parties.  *Owens*, 244 F.3d at 713.  The Ninth Circuit has mandated a four-factor

17  test for determining whether there is an identity of claims: "(1) whether rights or interests

18  established in the prior judgment would be destroyed or impaired by prosecution of the second

19  action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the

20  two suits involve infringement of the same right; and (4) whether the two suits arise out of the same

21  transactional nucleus of facts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).  The

22  fourth factor is the most important.  *Id.*

23      After reviewing the record pertaining to the Set Aside Motion and various related

24  proceedings, the Court determines herein that claim preclusion is not applicable to the Set Aside

25  Motion.  A careful examination of the Court's prior rulings reveals that there was no final judgment

26  entered on the merits of the claim effectively asserted in the Set Aside Motion: that the foreclosure

27  and sale of the Property by Wells Fargo should be set aside as a violation of the automatic stay in

28  Greenstein's case.

**AMENDED MEMORANDUM OF DECISION**

Dismissal of the amended complaint in the First Adversary Proceeding did not result in a final judgment on the merits of any claims because this dismissal was granted for lack of standing. *See United States v. Park Place Assocs*., 563 F.3d 907, 925 (9th Cir. 2009); *Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1369 (Fed Cir. 2003); *Greenstein v. Wells Fargo Bank, N.A. (In re Greenstein)*, 2016 Bankr. LEXIS 242, *26-27 (9th Cir. B.A.P.  July 23, 2015).

Dismissal of the complaint in the Second Adversary Proceeding did not result in a final judgment on the merits of the stay violation claim, because (i) only Nagata and Wolvek were properly dismissed and (ii) the claim asserted against them was not the stay violation claim.  The complaint against Nagata and Wolvek was dismissed for failure to state a claim following a hearing on their motions to dismiss, held on December 19, 2012.  *See* Case No. 1:12-ap-01379-MB, Adv. Dkt. 25, 26.  Following a subsequent hearing on Wells Fargo's motion to dismiss, the Court entered an order dismissing Wells Fargo on February 7, 2014.  Adv. Dkt. 38.  The dismissal of Wells Fargo, however, ultimately did not result in a final judgment on the merits.  *Id.* at Adv. Dkt. 65. Upon Greenstein's motion for reconsideration, this Court subsequently vacated the Wells Fargo dismissal because Greenstein had voluntarily dismissed the remainder of her complaint *before* the Court held its hearing on Wells Fargo's motion.  *Id.* at Adv. Dkt. 41, 65.  The Court lacked authority to grant the motion at that point because Greenstein had voluntarily dismissed her complaint.  *See Commercial Space Mgmt. Co., Inc. v. Boeing Co., Inc.*, 193 F.3d 1074, 1080 (9th Cir. 1999).

Moreover, the dismissal of Greenstein's claim against Nagata and Wolvek is not preclusive of Greenstein's claim against Wells Fargo because the two claims are different.  Greenstein's pro se complaint in the Second Adversary Proceeding is not a model of clarity.  The Court, however, construes it to seek *different* claims for relief against different parties: (i) damages against Nagata and Wolvek for their conduct in obtaining the In Rem Order in the Lipkis case, and (ii) a determination that Wells Fargo's foreclosure of the Property violated the stay, should be set aside, and should result in stay violation damages.  *Id.* at Adv. Dkt. 1.  Only the latter claim is the claim asserted against Wells Fargo in the Set Aside Motion.

19

In the nomenclature of the claim preclusion doctrine, the Court finds that an "identity of claims" is lacking between the claim asserted against Nagata and Wolvek on the one hand, and the claim asserted against Wells Fargo on the other. The Court's determination that Nagata and Wolvek could not be held liable for statements they made to the Court in the Lipkis case does not "destroy or impair" Greenstein's claim that foreclosure of the Property violated the automatic stay. These claims do not involve violation of the same right. Greenstein's claim against Nagata and Wolvek is that Greenstein suffered damages as a result of false statements they made to the Court. Greenstein's claim against Wells Fargo is that foreclosure against the Property violated her rights under the Bankruptcy Code and should be set aside.

Furthermore, the Court finds that the two claims are *not* based on the same set of operative facts. The facts pertinent to Greenstein's damages claim against Nagata and Wolvek are what they said and did in Court during the Lipkis case. The facts pertinent to Greenstein's stay violation claim are Greenstein's undisputed lack of notice prior to entry of the In Rem Order, her conduct after she received notice of the In Rem Order, and Wells Fargo's conduct in proceeding with the foreclosure. While there is a connection between these events, the Court concludes that the connection does not rise to the level of a "common nucleus of operative facts." Thus, the dismissal of Nagata and Wolvek from the Second Adversary Proceeding is not preclusive of the claims asserted against Wells in that action and in the Set Aside Motion.

Likewise, the Court concludes that none of the orders entered in the Lipkis case serves as a final judgment on the merits precluding the Set Aside Motion. *See* Case No. 1:11-bk-23430-MT, Dkt. 50, 51, 52, 57. In three motions, Greenstein sought essentially the same relief in the Lipkis case that she presently seeks in the Set Aside Motion. But Judge Tighe did not deny any of those motions on the merits. Noting that Greenstein had already filed the Second Adversary Proceeding in her own case, the Court held that it would be more appropriate for Greenstein to seek relief in her own case, not the Lipkis case. *See id.,* Dkt. 50 at 2 ("The adversary proceeding filed by Movant is the proper mechanism to address Movant's complaints.") Nothing in these orders suggests that Judge Tighe considered and ruled on the merits of Greenstein's claims for relief.

**AMENDED MEMORANDUM OF DECISION**

1       Accordingly, upon reconsideration of the Set Aside Motion following remand from the

2  BAP, the Court concludes that the doctrine of claim preclusion is not applicable to the Set Aside

3  Motion.

4     **B.**     **Issue Preclusion**

5       In connection with the remanded Set Aside Motion, Wells Fargo argues that the doctrine of

6  collateral estoppel or issue preclusion is dispositive.  Specifically, Wells Fargo contends that the

7  issue of whether the In Rem Order should be set aside has been litigated and decided against

8  Greenstein on multiple occasions.  This argument also fails.

9       Under federal law, four factors must be present for collateral estoppel to apply: (1) the issue

10  at stake was identical to the issue in the previous proceeding; (2) the issue was actually litigated

11  and decided in the prior proceeding; (3) there was a full and fair opportunity to litigate the issue;

12  and (4) the issue was necessary to decide the merits.  *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th

13  Cir. 2012).

14       The problem here is that the validity of the In Rem Order was not clearly *decided* in the

15  prior proceedings.  In the orders dismissing Nagata and Wolvek from the Second Amended

16  Adversary, the Court made no specific findings on this issue.  *See* Case No. 1:12-ap-01379-MB,

17  Adv. Dkt. 25, 26.  Nor did the written tentative rulings posted by the Court.  Those tentative rulings

18  stated simply: "Although it appears plaintiff now has standing to bring this action, grant the motion

19  and dismiss the Complaint without leave to amend for failure to plead any sufficient cause of action

20  against these Defendants."

21       By concluding that Greenstein did not state a claim upon which relief could be granted

22  against Nagata and Wolvek, the Court did not necessarily decide whether the In Rem Order was a

23  valid order or whether Wells Fargo's subsequent foreclosure of the Property was a violation of the

24  stay in Greenstein's case.  Absent more detailed findings, all that can be concluded from this ruling

25  is that these lawyers could not be liable to Greenstein for the sort of conduct alleged in the

26  complaint: i.e., making allegedly false statements to the Court in the course of litigation in the

27  Lipkis case.  Given the state of the record, the Court cannot conclude that the dismissal of Nagata

28

1   and Wolvek as defendants foreclosed Greenstein's stay violation claim against Wells Fargo as a

2   matter of issue preclusion.

3       Likewise, the orders entered by the Court in the Lipkis case denying Greenstein relief from

4   the In Rem Order did not decide whether the In Rem Order was valid or whether Wells Fargo's

5   subsequent foreclosure of the Property was a violation of the stay in her case.  As noted, those

6   orders merely held that Greenstein should seek relief in her own bankruptcy case, in which the

7   Second Adversary Proceeding was then pending.  *See* Case No. 1:11-bk-23430-MT, Dkt. 50, 51,

8   52, 57.  As such, these orders do not justify denial of the Set Aside Motion based on issue

9   preclusion.

10      Accordingly, the doctrine of issue preclusion does not bar the claim asserted in the Set

11  Aside Motion.

12      **C.    Validity of the In Rem Order**

13      On the merits, the linchpin of Greenstein's argument is that the In Rem Order against the

14  Property was invalid at the time it was entered.  If the In Rem Order was not valid, then the

15  automatic stay in her case was applicable to the Property, and the foreclosure of the Property by

16  Wells Fargo was a violation of the stay.  Greenstein advances three principal arguments in support

17  of her position.  First, she contends that the Court was without jurisdiction to enter the In Rem

18  Order in the Lipkis case because the Lipkis Deed was a forgery and there was no actual transfer of

19  any property interest to the Lipkis bankruptcy estate.  Second, she contends that the In Rem Order

20  is void on due process grounds, i.e., that she did not receive notice and an opportunity to be heard

21  on whether the Court should approve the In Rem Order prior to its entry.  Third, she contends that

22  the In Rem Order was based on inadequate or erroneous factual contentions.  Below, the Court

23  explains why these arguments fail.  But first, the Court briefly addresses the statute under which the

24  In Rem Order was issued.

25

26

27

28

**AMENDED MEMORANDUM OF DECISION**

1    **1.    Section 362(d)(4)**

2    Bankruptcy Code section 362(d)(4) provides as follows:

3    (d) On request of a party in interest and after notice and a hearing, the court

4    shall grant relief from the stay provided under subsection (a) of this section, such as

5    by terminating, annulling, modifying, or conditioning such stay—

6    (4)  with respect to a stay of an act against real property under

7    subsection (a), by a creditor whose claim is secured by an interest in such

8    real property, if the court finds that the filing of the petition was part of a

9    scheme to delay, hinder, or defraud creditors that involved either—

10    (A)  transfer of all or part ownership of, or other interest in,

11    such real property without the consent of the secured creditor or court

12    approval; or

13    (B) multiple bankruptcy filings affecting such real property.

14    If recorded in compliance with applicable State laws governing

15    notices of interests or liens in real property, an order entered under paragraph

16    (4) shall be binding in any other case under this title purporting to affect such

17    real property filed not later than 2 years after the date of the entry of such

18    order by the court, except that a debtor in a subsequent case under this title

19    may move for relief from such order based upon changed circumstances or

20    for good cause shown, after notice and a hearing. Any Federal, State, or local

21    governmental unit that accepts notices of interests or liens in real property

22    shall accept any certified copy of an order described in this subsection for

23    indexing and recording.

24    11 U.S.C. § 362(d)(4).

25    The special relief accorded creditors under this statute was added to the Bankruptcy Code in

26    2005 under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  *See First*

27    *Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.)*, 470 B.R. 864,

28    870 (9th Cir. B.A.P. 2012).  The statute permits a bankruptcy court "to grant *in rem* relief from the

23

---

**AMENDED MEMORANDUM OF DECISION**

1   automatic stay in order to address schemes using bankruptcy to thwart legitimate foreclosure

2   efforts through one or more transfers of interest in real property." *Id.* If the court's order granting

3   such relief is recorded in compliance with applicable state law, it will be binding in any subsequent

4   bankruptcy case purporting to affect the same real property for two years. *Id.*

5          A movant must establish three elements to obtain relief under section 362(d)(4): (i) the

6   debtor's bankruptcy filing must have been part of a scheme, (ii) the object of the scheme must be to

7   delay, hinder, or defraud creditors, and (iii) the scheme must involve either (a) the transfer of some

8   interest in the real property without the secured creditor's consent or court approval, or (b) multiple

9   bankruptcy filings affecting the property. *See* 11 U.S.C. § 362(d)(4). For the court to grant relief,

10  "it must affirmatively find that the three elements above are present." *In re First Yorkshire*

11  *Holdings, Inc.*, 470 B.R. at 870 (citing *In re Abdul Muhaimin*, 343 B.R. 159, 169 (Bankr. D. Md.

12  2006)). A bankruptcy case may become part of a scheme to hinder delay or defraud creditors

13  regardless of whether the debtor was a party to that scheme. *See In re Dorsey*, 476 B.R. 261, 266-

14  68 (Bankr. C.D. Cal. 2012).

15         Among others, section 362(d)(4) is frequently applicable to a scheme known as "case

16  hijacking" or "property dumping." *Id.* at 266. This scheme involves a borrower, or a person acting

17  on behalf of a borrower, purporting to transfer a full or fractional interest in real property to a

18  debtor in bankruptcy in order to utilize the automatic stay in the debtor's case to stave off

19  foreclosure of the property. *Id.*

20         Usually the debtor does not list the property on his or her schedules in the

21         bankruptcy case, and there is otherwise no indication that the debtor claims an

22         interest in the property. Sometimes the debtor will submit a response to the court

23         disavowing any ownership interest in the property, like the Debtor in this case. The

24         original borrower, or someone working on the borrower's behalf, may have found

25         the Debtor's name by conducting a search through the public bankruptcy records.

26         The borrower may have falsified and backdated a grant deed, and the deed may have

27         never been actually recorded (although the copy of the grant deed submitted in this

28         case has a recording stamp and appears to have been recorded). The exact method

24

1     through which the scheme is accomplished may not necessarily be relevant.

2     However, what is apparent, particularly in this case, is that the only party who is

3     advantaged by this scheme is the original borrower because he or she benefits from

4     the automatic stay in the bankruptcy case of another party by transferring an interest

5     in property to a debtor in bankruptcy without filing a bankruptcy petition and

6     complying with the requisite duties of a debtor in bankruptcy and having collection

7     activity by his or her creditors stayed against the property while retaining an interest

8     in the property.

9 *Id.; see also In re 4th St. E. Inv'rs, Inc.*, 474 B.R. 709, 711 (Bankr. C.D. Cal. 2012) (applying

10 section 362(d)(4) to hijacked case in which an interest in the subject property "purportedly" was

11 transferred to the debtor).

12     Furthermore, in the experience of the Court, it may be clear that a case has been hijacked

13 for the benefit of a borrower, but not clear whether the borrower was involved in perpetrating the

14 scheme.  Although the borrower is usually the beneficiary of the scheme, it sometimes appears that

15 the scheme may have been perpetrated by an unscrupulous lawyer, bankruptcy petition preparer, or

16 unauthorized legal practitioner, without the borrower's knowledge or participation.  Notably, the

17 language of section 362(d)(4) does not require a court to determine precisely *who* is responsible for

18 perpetrating the scheme, only that the case has become part of a scheme that satisfies the

19 requirements of the statute.  *See* 11 U.S.C. § 362(d)(4).

20     Whatever the circumstances, "relief under section 362(d)(4) has serious implications." *In re*

21 *First Yorkshire Holdings, Inc.*, 470 B.R. at 871.

22     By seeking relief under § 362(d)(4), the creditor requests specific prospective

23     protection against not only the debtor, but also every non-debtor, co-owner, and

24     subsequent owner of the property.  If granted, such relief nullifies the ability of the

25     debtor and any other third party with an interest in the property to obtain the benefits

26     of the automatic stay in future bankruptcy case for a period of two years.

27

28

**AMENDED MEMORANDUM OF DECISION**

1 *Id.* at 871.  The filing of a case by a debtor asserting an interest in property that is subject to a

2 section 362(d)(4) in rem order that has been properly recorded excludes that property from the

3 protections of the automatic stay in the debtor's case.  11 U.S.C. § 362(b)(20).

4      The statute, however, has a unique "safety valve" that enables the owner of such property to

5 seek relief from a section 362(d)(4) order entered in the prior case.  Specifically, the statute

6 provides that "a debtor in a subsequent case under this title may move for relief from such order

7 based upon changed circumstances or for good cause shown, after notice and a hearing."  11 U.S.C.

8 § 362(d)(4).  Accordingly, when a debtor seeking bankruptcy protection holds property that is

9 subject to an in rem order under section 362(d)(4) entered in some other bankruptcy case, the

10 debtor may ask the bankruptcy court for relief from that prior order and obtain the protection of the

11 automatic stay.

12      There is no dispute that the In Rem Order was entered in the Lipkis case pursuant to

13 Bankruptcy Code section 362(d)(4), that the order applied to the Property, and that the order was

14 duly recorded in accordance with the statute.  Greenstein argues, however, that the In Rem Order

15 was invalid at the time it was entered because (i) the Court lacked jurisdiction to enter the order,

16 (ii) Greenstein did not receive notice and an opportunity to be heard prior to its entry, and (iii) the

17 order was premised on erroneous facts.  Each of these arguments fails.

### 2. Jurisdiction

19      Federal Rule of Civil Procedure 60(b)(4), made applicable to bankruptcy cases pursuant to

20 Federal Rule of Bankruptcy Procedure 9024, permits a party to seek relief from a judgment that is

21 void.  Fed. R. Civ. P. 60(b)(4); Fed. R. Bankr. P. 9024.  "A void judgment is a legal nullity." *United*

22 *Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010).  "[Rule] 60(b)(4) applies only in the

23 rare instance where a judgment is premised either on a certain type of jurisdictional error or on a

24 violation of due process that deprives a party of notice or the opportunity to be heard."  *Id.* at 271.

25      "Federal courts considering [whether] a judgment is void because of a jurisdictional defect

26 generally have reserved relief only for the exceptional case in which the court that rendered

27 judgment lacked even an 'arguable basis' for jurisdiction." *Espinosa*, 559 U.S. at 271 (quoting

28 *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir. 1990) ("[T]otal want of

**AMENDED MEMORANDUM OF DECISION**

1  jurisdiction must be distinguished from an error in the exercise of jurisdiction and, . . . only rare

2  instances of a clear usurpation of power will render a judgment void" (brackets and internal

3  quotation marks omitted)).

4       Greenstein contends that the In Rem Order is void because the Court did not have

5  jurisdiction to consider and grant section 362(d)(4) relief against her property.  Greenstein argues

6  that the Court lacked jurisdiction because (1) Greenstein was not a party to the Lipkis case and not

7  then in bankruptcy herself, (2) the Property was not listed by Lipkis in his Schedules of Assets,

8  (3) Lipkis disclaimed any interest in the property or any participation with the Lipkis Deed that

9  purported to transfer the property to him, and (4) the Lipkis Deed was a forgery, such that no

10 interest in the Property was actually transferred to Lipkis or his estate.

11      The bankruptcy court has jurisdiction over all civil proceedings arising under title 11, or

12 arising in or related to cases under title 11.  28 U.S.C. § 1334(b).  The request for entry of the In

13 Rem Order in the Lipkis case fell within the Court's jurisdiction because it was a proceeding under

14 title 11, specifically Bankruptcy Code section 362(d)(4).  Nothing in the language of these statutes

15 suggests that the Court's jurisdiction is dependent on the owner of the property being a debtor, the

16 listing of the subject property in the debtor's schedules, the assertion of any interest in the property

17 by the debtor, or the legal validity of the alleged transfer of property to the debtor.  These

18 considerations may be relevant to whether a bankruptcy court should properly grant a request for

19 relief, but they do not dictate whether a bankruptcy court has the jurisdiction to consider such a

20 request.  *See Espinosa*, 559 U.S. at 271-72 (contrasting the issue of whether a court has the

21 jurisdiction to adjudicate a request for relief with the question of whether its decision to grant or

22 deny that relief was warranted); *In re American Hardwoods*, 885 F.2d 621, 624 (9th Cir. 1989)

23 (distinguishing a court's jurisdiction to entertain an action from its power to act).

24      Even if it is assumed that the Court's jurisdiction to consider section 362(d)(4) relief

25 depends on an effective transfer of property to the debtor, the Court made an express factual

26 finding in the In Rem Order that such a transfer occurred.  Specifically, the In Rem Order adopts

27 the following findings:

28

**AMENDED MEMORANDUM OF DECISION**

1    9. ☒ The filing of the petition was part of a scheme to delay, hinder and

2    defraud creditors that involved either:

3    ☒ transfer of all or part ownership of, or other interest in, the Property

4    without the consent of the secured creditor or court approval. (see attached

5    continuation page).

6    . . .

7    [A]n interest in the Property was impermissibly transferred to [Lipkis] without the

8    knowledge of [Lipkis]. Without [Lipkis's] consent, his Chapter 13 bankruptcy case

9    proceeding is being used for an improper purpose as part of a scheme to delay,

10    hinder and defraud creditors that involved a transfer of all or part ownership of, or

11    interest in the [Property] without the consent of this Movant or court approval.

12    BAP Memorandum at 4-5; *see also* Case No. 1:11-bk-23430-MT, Dkt. 30 at 2-3.

13    At this point, Greenstein cannot collaterally attack this finding. *See, e.g., Miller v.*

14    *Deutsche Bank Nat'l Trust Co.*, 2013 U.S. Dist. LEXIS 173521 (N.D. Cal. 2013). In *Miller,* the

15    debtor made an argument similar to that of Greenstein. The debtor argued that his lenders violated

16    the automatic stay with respect to property that was the subject of a section 362(d)(4) order entered

17    in another debtor's case. The debtor contended that the order should be disregarded because the

18    lenders obtained it without submitting any judicially noticeable evidence that the other debtor had

19    any interest in the subject property. *Id.* at *7-*8.

20    Although the debtor in *Miller v. Deutsche Bank Nat'l Trust Co.* did not frame his argument

21    as one of "jurisdiction," the district court's analysis is instructive. The district court observed that

22    the bankruptcy court had made an express factual finding that the subject property had been

23    transferred as part of a scheme to hinder, delay or defraud a creditor. The district court concluded,

24    therefore, that the debtor's argument was an improper collateral attack on a final order of a federal

25    court. *Id.* (citing *In re Alakozai*, 499 B.R. 698 (9th Cir. B.A.P. 2013)). Here, Greenstein argues

26    that the Court lacked jurisdiction to enter the In Rem Order because the Lipkis Deed did not

27    transfer any interest in the Property to Lipkis. To the extent her argument contradicts the express

28

**AMENDED MEMORANDUM OF DECISION**

1  factual finding made in the In Rem Order, Greenstein's argument is an improper collateral attack on

2  that order.

3      This analysis is consistent with the principle that an order is void on jurisdictional grounds,

4  only if the court entering the order lacked even an "arguable basis" for jurisdiction. *Espinosa*, 559

5  U.S. at 271.  To the extent a transfer to Lipkis was necessary to establish jurisdiction, the

6  representations of counsel regarding the contents of the Lipkis Deed provided the Court with at

7  least an "arguable basis" to assert such jurisdiction.  Greenstein contends that the Lipkis Deed was

8  a forgery and therefore legally ineffective.  But there is no dispute that the Lipkis Deed exists and

9  that it purports to transfer the Property to Lipkis.  Even if Greenstein proves that the Lipkis Deed

10  was legally ineffective, and even if the Court's exercise of jurisdiction proves erroneous in

11  hindsight, it does not amount to the "total want of jurisdiction" or "usurpation of power" that would

12  render the In Rem Order void. *Id.*

13      Accordingly, the In Rem Order is not void for lack of jurisdiction.

14        **3.    Due Process**

15      Greenstein also contends that the In Rem Order is void because it was entered against the

16  Property in violation of her procedural rights under the Due Process Clause of the Constitution.

17  Greenstein argues that she was deprived of due process rights as the owner of the Property when

18  the In Rem Order was entered in the Lipkis case without prior notice and an opportunity to be

19  heard.  There is no factual dispute that Greenstein did not receive notice of the proposed In Rem

20  Order prior to its entry.  But Greenstein repeatedly has acknowledged that she learned of the In

21  Rem Order on May 31, 2012, the day she filed her bankruptcy case, and that she received a copy of

22  the order on June 1, 2012.  Case No. 1:11-bk-23430-MT, Case Dkt. 43 at 4, 12-17, Dkt. No. 44 at

23  4-5, 13-21, Dkt. 45 at 4, 11-20; *see also* Adv. Dkt. 72-1 at 5-6.  The foreclosure on the Property did

24  not occur until July 11, 2012, almost six weeks later.  During that time, Greenstein did not exercise

25  her right to seek relief from the In Rem Order under section 362(d)(4) in *any* court.  Her motions in

26  the Lipkis case to vacate the In Rem Order were filed on August 7, 2012, at the earliest, *see* Case

27  No. 1:11-bk-23430-MT, Case Dkt 43, and the First Adversary Proceeding was not filed until later

28  the same month, *see* Case No. 1:12-ap-01300-AA, Case Dkt. 1.  The present Set Aside Motion was

**AMENDED MEMORANDUM OF DECISION**

1   not filed until December 27, 2013.  *See* Case No. 1:12-bk-15099-MB, Case Dkt. 71.  Under the

2   totality of these circumstances, the Court concludes that Greenstein was not deprived of procedural

3   due process.

4        "Due process, unlike some legal rules, is not a technical conception with a fixed content

5   unrelated to time, place and circumstances."  *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895

6   (1961).  "[D]ue process is flexible and calls for such procedural protections as the particular

7   situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  As in other areas of the law,

8   the requirements of procedural due process apply to the exercise of in rem jurisdiction.  It is well

9   settled that "property cannot be subjected to a court's judgment unless reasonable and appropriate

10  efforts have been made to give the property owners actual notice of the action."  *Shaffer v. Heitner*,

11  433 U.S. 186, 206 (1977); *see also In re San Vicente Med. Partners, Ltd.*, 962 F.2d 1402, 1407 (9th

12  Cir. 1991) ("The Constitution requires that property owners receive procedural due process in the

13  form of notice and opportunity for a hearing.").  "This conclusion recognizes . . . that an adverse

14  judgment in rem directly affects the property owner by divesting him of his rights in the property

15  before the court."  *Shaffer v. Heitner*, 433 U.S. at 206.

16       The requirements of procedural due process apply to relief under Bankruptcy Code section

17  362(d)(4).  *See, e.g., In re First Yorkshire Holdings, Inc.,* 470 B.R. at 871;  *In re Dorsey*, 476 B.R.

18  at 270; *In re Chul Hyun Gong*, 2016 Bankr. LEXIS 2833 (Bankr. C.D. Cal. August 4, 2016); *In re*

19  *Wilke*, 429 B.R. 916, 921 (N.D. Ill. 2010).  When relief is granted under section 362(d)(4) it is in

20  rem relief.  A court's order under section 362(d)(4) burdens the subject real property and, if

21  properly recorded, deprives the owner (and any subsequent owner) of the ability to obtain the

22  protection of the automatic stay in a subsequent bankruptcy case.  A section 362(d)(4) order does

23  not deprive the owner of all rights in the property the way an in rem civil forfeiture order does, but

24  it does deprive the owner of significant rights in respect of the property that arise under the

25  Bankruptcy Code.

26       Many of the cases dealing with due process under section 362(d)(4) deal with the adequacy

27  of notice provided to the property owner prior to the entry of an in rem order.  For instance, in *In re*

28  *First Yorkshire Holdings, Inc.,* on direct appeal from a section 362(d)(4) order, the BAP concluded

30

that the due process rights of the debtor-owner of the property were satisfied when he was present at the hearing and had ample opportunity to defend the motion. 470 B.R. at 871. In both *In re Dorsey*, 476 B.R. at 270 and *In re Chul Hyun Gong*, 2016 Bankr. LEXIS 2833, the court held that due process was satisfied when the non-debtor owner of the real property was served with the motion and notice of the hearing. In *In re Wilke*, 429 B.R. 916, 921 (N.D. Ill. 2010), the court addressed its due process concerns by ordering the party requesting relief to serve a trial subpoena on a non-debtor with a potential interest in the subject property.

The foregoing cases are instructive, but none involves the problem of a property owner's effort to seek relief from a section 362(d)(4) order that was entered in another debtor's case, without prior notice to the property owner. When this circumstance has arisen, several courts have held that the property owner was *not* entitled to notice of the motion that burdened her property. In *In re Black v. HSBC Bank, USA, N.A. (In re Black)*, 514 B.R. 605 (Bankr. E.D. Cal. 2014), the debtors, former owners of real property foreclosed upon by their lenders, sought damages for violation of the automatic stay in connection with a subsequent unlawful detainer proceeding to remove them from the premises. A section 362(d)(4) order had been entered in the prior case of a different debtor. As Greenstein does here, the debtors argued that their due process rights had been violated because they did not receive notice of the motion requesting section 362(d)(4) relief. The court rejected this argument. First, the court held that the owners of the property were not entitled to notice of that motion because they were not debtors in that case. *Id.* at 614. Second, the court observed that the debtors had "an opportunity in their own bankruptcy case to request relief from the In Rem Order" under section 362(d)(4). *Id.* The debtors actually sought such relief on an emergency basis, but their request was denied on procedural grounds. *Id.*

In *Hatton v. Ventures Trust (In re Hatton)*, 2017 Bankr. LEXIS 3153 (Bankr. E.D. Cal. September 15, 2017), the debtor alleged that her due process rights were violated when her lender foreclosed on her home, three and a half weeks after she filed her chapter 13 petition. The lender argued that it had proceeded under a properly recorded section 362(d)(4) order entered in the most recent bankruptcy of the debtor's spouse—the third such case. The debtor complained she did not receive notice of the motion seeking entry of that order, even though the lender knew that she was a

1  trustor under the deed of trust.  The court rejected the argument.  Relying on *In re Black*, and citing

2  the absence of any contrary authority, the court held that a non-debtor (even a co-owner of the

3  subject property) is simply not entitled to notice of a relief from stay motion filed in a debtor's case.

4  *Id.* at *8.

5      The court in *In re Hatton* also relied on *Alakozai v. Citizens Equity First Credit Union (In*

6  *re Alakozai)*, 499 B.R. 698 (9th Cir. B.A.P. 2013).  In *Alakozai*, a husband and wife filed six

7  different bankruptcy cases—some jointly and some individually.  In the sixth such case, in which

8  Mrs. Alakozai was the sole debtor, she brought an action for stay violation damages against the

9  lender that had foreclosed on her home and sought to evict her from the premises.  The lender

10  argued that it had proceeded to obtain ownership and control of the property pursuant to a section

11  362(d)(4) order entered in the fourth case, in which Mr. Alakozai had been the sole debtor.  Mrs.

12  Alakozai argued that the in rem order entered in her husband's case was invalid because she was

13  not a debtor in that case and not in "privity" with her husband.  The BAP rejected these arguments,

14  based on its conclusion that "'[a]n order entered under § 362(d)(4) binds any party asserting an

15  interest in the affected property, including every non-debtor, co-owner, and subsequent owner of

16  the property."  *Id.* at 704 (citing *In re First Yorkshire Holdings, Inc.*, 470 B.R. at 871).

17      To the extent *In re Black* and *In re Hatton* hold that the owner of real property is not

18  entitled to notice of a motion seeking to burden it with a section 362(d)(4) order, the Court

19  respectfully disagrees.  Although it is true that nothing in the Bankruptcy Code or Bankruptcy

20  Rules requires such notice, the Court is persuaded that the well-settled principles of procedural due

21  process applicable to in rem proceedings require that the owner of such property receive notice and

22  an opportunity to be heard.  This conclusion is consistent with the holdings in *In re First Yorkshire*

23  *Holdings, Inc., In re Dorsey*, *In re Chul Hyun Gong*, and *In re Wilke*, which recognize the due

24  process issues implicated by section 362(d)(4) relief.  Furthermore, the Court concludes that this

25  position is not inconsistent with the holding of *In re Alakozai*, in which the appellant appears not to

26  have presented the issue as a matter of due process, but instead as a matter of "privity," which the

27  BAP concluded was irrelevant.

28

**AMENDED MEMORANDUM OF DECISION**

1   The Court is not persuaded, however, that failure to provide the property owner with prior

2   notice of a request for in rem relief is necessarily fatal to the validity of the order.  Under the

3   unique structure of section 362(d)(4), "a debtor in a subsequent case under this title may move for

4   relief from such order based upon changed circumstances or for good cause shown, after notice and

5   a hearing."  11 U.S.C. § 362(d)(4).  Thus, a property owner burdened by a section 362(d)(4) order

6   entered without prior notice can still move for relief from that order as soon as she becomes a

7   debtor in her own bankruptcy case.  As long as the debtor has adequate notice that the section

8   362(d)(4) order exists and burdens her property, the debtor has an opportunity to be heard by the

9   bankruptcy court and to obtain relief from the order.  This provides an effective remedy because the

10   burden imposed by a section 362(d)(4) order—exclusion of the property from the protection of the

11   automatic stay—is realized only if and when the property owner elects to seek relief under the

12   Bankruptcy Code.

13   Accordingly, the Court holds that (i) the owner of real property that is the subject of a

14   request for section 362(d)(4) relief should receive notice of that request and an opportunity to be

15   heard prior to entry of the order, but (ii) failure to provide such notice and opportunity does not

16   necessarily constitute a due process violation.  Whether there has been a violation will depend on

17   whether the property owner ever gets notice of the in rem order, and whether the notice is adequate

18   to permit the property owner to timely seek relief from that order based on changed circumstances

19   or good cause shown, pursuant to Bankruptcy Code section 362(d)(4).[11]

20   Here, the Court concludes that Greenstein was not deprived of her procedural due process

21   rights, even though she did not receive prior notice of the request for entry of the stipulated In Rem

22   Order.  It would have been preferable that she receive such prior notice, but she did receive

23   subsequent notice of the In Rem Order in ample time and had ample opportunity to seek relief from

24   that order under the "safety valve" in section 362(d)(4).  Greenstein acknowledges learning about

25   the In Rem Order on May 31, 2012, the day she filed her bankruptcy.  She further acknowledges

26

27   [11]   Effective January 3, 2017, this Court adopted Local Bankruptcy Rule 4001-1(c)(1)(B),
requiring service on the "original borrower" if a motion seeks relief under section 362(d)(4).

28

**AMENDED MEMORANDUM OF DECISION**

1    that she received a copy of the In Rem Order on the very next day, June 1, 2012.  The foreclosure

2    of her home did not occur for almost six weeks.  During that time she could have sought relief from

3    the In Rem Order pursuant to section 362(d)(4) but did not do so.  By the time she commenced the

4    first of her efforts, a motion filed in the Lipkis case on August 7, 2012, it was too late.  The

5    property had been lost in foreclosure.[12]

6        Greenstein contends that she was confused by the In Rem Order and did not believe it

7    applied to her because it was entered in the Lipkis case.  But there is nothing ambiguous about the

8    In Rem Order.  The order clearly identifies the Property, 5160 Llano Drive, Woodland Hills, and

9    clearly provides that the movant is being granted relief "to enforce its remedies to foreclose upon

10   and obtain possession of the Property."  Quoting from the statute itself, the In Rem Order further

11   states: "If recorded in compliance with applicable state law governing notices of interests or liens in

12   the Property, this Order is binding and effective under § 362(d)(4)(A) and (B) in **any other**

13   **bankruptcy case purporting to affect the Property** filed not later than 2 years after the date of

14   the entry of this Order. . . "  Case No. 1:11-bk-23430-MT, Dkt. 30 at 2 (emphasis added).  The

15   order also expressly advises Greenstein of her remedy, stating that "**a debtor in a subsequent**

16   **bankruptcy case may move for relief** from this Order based upon changed circumstances or for

17   good cause shown, after notice and a hearing."  *Id.* (emphasis added).

18       Any violation of Greenstein's procedural due process rights arising from entry of the In

19   Rem Order without prior notice was remedied by the notice she received after its entry and the

20   availability of relief under Bankruptcy Code section 362(d)(4).  The In Rem Order adequately

21   explained that the automatic stay would not be applicable to the Property in any subsequent case

22   (such as Greenstein's case) and provided notice of her opportunity to obtain relief from that order

23   under Bankruptcy Code section 362(d)(4).  Greenstein did not timely avail herself of that

24   opportunity.  The first of her motions seeking relief from the In Rem Order was filed

25   _____

26   [12]  Because Greenstein acknowledges she received a copy of the In Rem Order from Wells Fargo's
     counsel on the day she filed bankruptcy—in enough time to seek meaningful relief—it is not
     necessary to consider whether recordation of the In Rem Order provided her with actual or
27   constructive notice of its contents.

28

**AMENDED MEMORANDUM OF DECISION**

1    approximately two months after she obtained a copy of the order—well after the Property had been

2    foreclosed upon.  Under these circumstances, Greenstein had adequate notice and an opportunity to

3    be heard in respect of the In Rem Order.

4         Accordingly, the In Rem Order is not void as a violation of Greenstein's due process rights.

5                    **4.    Finality of In Rem Order/No Collateral Attack**

6         To the extent Greenstein argues that the In Rem Order should be set aside because it was

7    improvidently granted—rather than being void—her arguments also fail as an impermissible

8    collateral attack on a final order of a federal court.  An order granting relief from stay is a final

9    order.  *In re Alakozai*, 499 B.R. at 704 (citing *Samson v. W. Capital Partners, LLC (In re Blixseth)*,

10   684 F.3d 865, 866 n.1 (9th Cir. 2012)).  There was no appeal of the In Rem Order and its finality is

11   therefore not subject to challenge.  A final order of a federal court may not be collaterally attacked.

12   *Id.*  (citing *Watts v. Pinckney*, 752 F.2d 406, 410 (9th Cir. 1985), *Heritage Pac. Fin. LLC v.*

13   *Machuca (In re Machuca)*, 483 B.R. 726, 733 (9th Cir. B.A.P. 2012), and *Woods & Erickson, LLP*

14   v. *Leonard* (*In re AVI, Inc.*), 389 B.R. 721, 731 (9th Cir. B.A.P. 2008)).  Therefore, Greenstein

15   cannot now challenge whether entry of the In Rem Order was justified or appropriate.[13]

16                    **D.    No Stay Violation.**

17        In her Set Aside Motion, Greenstein argues that she is entitled to relief setting aside the

18   foreclosure and subsequent sale of the Property because those events violated the automatic stay in

19   her case.  Because the In Rem Order was a valid, final order of the Court—and not void as she

20   contends—there could be no stay violation.  The In Rem Order specifically granted Wells Fargo

21   relief from stay to obtain possession of the Property, and it was properly recorded in accordance

22   with section 362(d)(4).  At the time Wells Fargo foreclosed, the Property was not subject to the

23   automatic stay.  *See* 11 U.S.C. §§ 362(d)(4), 362(b)(20).  Furthermore, by the time Greenstein

24

25   [13]   Greenstein does not expressly argue in the Set Aside Motion—as she does in her First Amended
     Complaint—that the In Rem Order resulted from a "fraud upon the court."  That claim is addressed
26   in Section V.A.3.b(3) *infra*.  Nevertheless, to the extent the Set Aside Motion might be construed to
     seek relief from the In Rem Order based on a fraud against the court, pursuant to Federal Rule of
27   Civil Procedure 12(b)(3), the argument fails for the reasons set forth in Section V.A.3.b(3) *infra*.

28

**AMENDED MEMORANDUM OF DECISION**

1  sought relief from the In Rem Order, the Property was no longer property of her estate and any

2  restoration of the automatic stay would be futile.

3       Accordingly, based on the foregoing, the Court will enter a separate order **DENYING** the

4  Set Aside Motion.

5                    **V.       MOTIONS TO DISMISS**

6       The Defendants move to dismiss the First Amended Complaint in the Third Adversary

7  Proceeding pursuant to four separate motions to dismiss.  Each motion is addressed below.  All of

8  the Defendants argue that the Court should dismiss the Third Adversary Proceeding pursuant to

9  Federal Rule of Civil Procedure 12(b)(6), made applicable thereto under Federal Rule of

10  Bankruptcy Procedure 7012, for failure to state claims upon which relief can be granted.  A motion

11  under Rule 12(b)(6) tests the formal sufficiency of the statement of the claim for relief.  In

12  assessing whether a complaint states a claim, detailed factual allegations are not required, but

13  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

14  statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp.*

15  *v. Twombly*, 550 U.S. 544, 555, (2007)).

16       To survive dismissal under Rule 12(b)(6), a complaint's "[f]actual allegations must be

17  enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  A plaintiff

18  must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its

19  face.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964).  A claim is

20  plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

21  inference that the defendant is liable for the misconduct alleged." *Id*.  In resolving a Rule 12(b)(6)

22  motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff,

23  and accept all well-pleaded factual allegations as true. *Johnson*, 534 F.3d at 1122; *Knox v. Davis*,

24  260 F.3d 1009, 1012 (9th Cir. 2001).  However, the court need not accept legal conclusions as true.

25  *Johnson*, 534 F.3d at 1122 at 1949-50.

26       In considering a Rule 12(b)(6) motion, "courts must consider the complaint in its entirety,

27  as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to

28  dismiss, in particular, documents incorporated into the complaint by reference, and matters of

1  which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

2  322, (2007) (citations omitted).

3      "[A] pro se litigant is not excused from knowing the most basic pleading requirements,"

4  *American Ass'n of Naturopathic Physicians v. Hahurst*, 227 F.3d 1104, 1107-08 (9th Cir. 2000),

5  but in applying the foregoing standards enunciated by the Supreme Court, a federal court must

6  construe a pro se complaint liberally, and hold it to less stringent standards than pleadings drafted

7  by lawyers. *Hebbe v. Pliler*, 611 F.3d 1202, 1205 (9th Cir. 2010).  A pro se litigant whose

8  complaint is dismissed upon a Rule 12(b)(6) motion must be given leave to amend, unless it is

9  absolutely clear that the deficiencies of the complaint could not be cured by amendment.  *Lopez v.*

10  *Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (*en banc*); *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th

11  Cir. 1987).  Where an amendment to the complaint would be futile, the court may exercise its

12  discretion and deny leave to amend.  *Id.*[14]

13

14

15

16  [14]  Following hearings on the Set Aside Motion and the Motions to Dismiss and extensive briefing
by all of the parties, Greenstein filed her *Notice of Motion and Motion to Accept New Evidence*,
17  Adv. Dkt. 105 ("New Evidence Motion").  To the extent the New Evidence Motion contains file-
stamped or certified documents that are a matter of public record, the Court takes judicial notice of
18  those filings.  *See* Fed. R. Evid. 201.  However, the balance of the relief requested in the New
Evidence Motion is hereby denied.  The motion comprises statements that are not made under oath,
19  attaches documents that are not authenticated or otherwise self-authenticating, and several news
articles, which are of little probative value, if not entirely inadmissible as hearsay.

20  The Court previously entered its order granting the *Notice of Motion and Motion for Court to*
*Accept Clarification and Additional Responses* filed by Greenstein ("Clarification Motion").  *See*
21  Adv. Dkt. 78, 83.  The Court has considered the arguments contained in the Clarification Motion
and the pleadings filed in response thereto.
22
The Court also has considered and hereby grants the following requests for judicial notice:
23  (i) Wells Fargo Defendants' *Request For Judicial Notice in Support of Defendants' Motion to*
*Dismiss and Motion to Strike Claims From First Amended Adversary Complaint*, filed March 21,
24  2016, at Adv. Dkt. 36; (ii) Nagata's *Request For Judicial Notice*, filed on March 22, 2016, at Adv.
Dkt. 40; (iii) *Supplemental Request For Judicial Notice In Support Of Defendants' Reply To*
25  *Opposition To Motion To Dismiss First Amended Adversary Complaint*, filed on April 21, 2016,
Adv. Dkt. 72; (iv) Wells Fargo Defendants' *Request For Judicial Notice in Support of Defendant*
26  *Wells Fargo Bank, N.A.'s Response to Plaintiff's Motion For Clarification and Additional*
*Responses*, filed June 20, 2016, at Adv. Dkt. 89; and (v) Greenstein's *Request For This Court to*
27  *Take Judicial Notice*, filed June 24, 2016, at Adv. Dkt. 90.

28

**AMENDED MEMORANDUM OF DECISION**

**A.    Wells Fargo Defendants.**

**1.    Claim Preclusion**

The Wells Fargo Defendants argue that Greenstein's claims against them are barred by the doctrine of claim preclusion.  To the extent this argument pertains to Greenstein's claim that the Wells Fargo Defendants violated the automatic stay by foreclosing on the Property, it suffers from the same infirmities as the claim preclusion argument advanced in respect of the Set Aside Motion, which asserts the same claim.  *See supra* Section IV.A.

To the extent this argument pertains to the myriad other claims asserted by Greenstein under state law, the argument has merit, based on the dismissal with prejudice of the Second State Complaint.[15]  Where claim preclusion is based on a state court judgment, federal courts must apply the law of preclusion for the state in which the judgment was entered.  *See Furnace v. Giurbino*, 838 F.3d 1019, 1023 (9th Cir. 2016).  In California, claim preclusion "bars relitigation of a cause of action that previously was adjudicated in another proceeding between the same parties or parties in privity with them."  *Citizens for Open Gov't v. City of Lodi*, 205 Cal. App. 4th 296, 324 (2012).  "Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit."  *Id.*  Claim preclusion bars "not only issues that were actually litigated but also issues that could have been litigated."  *Id.*

For claim preclusion purposes, "a dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action."  *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 793 (2010) (discussing the preclusive effect of a demurrer sustained without leave to amend); *see also Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993) ("In California, a judgment entered after the sustaining of a general demurrer is a judgment on the merits, and, to the extent that it adjudicates that the facts alleged do not establish a cause of action, it will bar a second action on the same facts.").

---

[15]    *See supra* note 10.

**AMENDED MEMORANDUM OF DECISION**

1    To determine whether two proceedings involve identical causes of action for claim

2 preclusion purposes, California courts apply the "primary rights" theory. *Boeken*, 48 Cal. 4th at

3 797. Under this theory, a cause of action arises from (1) an antecedent primary right and

4 corresponding duty, and (2) the breach of such primary right and duty (3) by the person who owes

5 the duty. *Id.* at 797-98. Thus, for purposes of applying the doctrine of claim preclusion, a cause of

6 action "is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or

7 the legal theory." *Id.* at 798.

8    The Court finds the claims asserted against the Wells Fargo Defendants in the Second State

9 Court Complaint are the same claims asserted in the First Amended Complaint. Greenstein alleges

10 in both complaints that she was harmed by the statements and conduct of Wells Fargo and its

11 agents and attorneys in connection with the servicing of her loan, the foreclosure of the Property,

12 and legal proceedings in respect of that foreclosure, the Lipkis bankruptcy case, and her own

13 bankruptcy case.

14    Although the First Amended Complaint provides additional factual detail, mentions some

15 additional legal theories, and specifically names some additional agents and attorneys (i.e., privies

16 of Wells Fargo), both complaints deal with the same primary rights. Both complaints contend that

17 Wells Fargo and its personnel conspired by various wrongful acts to deprive Greenstein of her

18 home and the equity value she allegedly held in it. As such, the dismissal with prejudice of the

19 Second State Court Complaint bars all of the claims in the First Amended Complaint against the

20 Wells Fargo Defendants—other than the stay violation claim—pursuant to the doctrine of claim

21 preclusion under California law.

22    For these reasons, the Court will dismiss all claims in the First Amended Complaint against

23 the Wells Fargo Defendants based on claim preclusion, other than the stay violation claim.[16] The

24 dismissal will be with prejudice because the application of the claim preclusion doctrine cannot be

25 overcome by further amendment.

26 _____

27 [16] As discussed below, the stay violation claim must be dismissed, but for other reasons. *See infra* Section V.A.3.a.

28

**AMENDED MEMORANDUM OF DECISION**

**2.     Issue Preclusion**

The Wells Fargo Defendants argue that the validity of the In Rem Order—an issue that is key to Greenstein's stay violation claim—already has been decided against Greenstein and may not be relitigated.  This argument fails for the same reasons the Court holds that the issue is not precluded for purposes of the Set Aside Motion.  *See supra* Section IV.B.

For these reasons, the Court will not dismiss any of the claims in the First Amended Complaint based on issue preclusion.

**3.     Claim-Specific Analysis**

**a.     Stay Violation Claim**

The First Amended Complaint seeks a declaration that the In Rem Order was void, that the foreclosure of the Property by Wells Fargo was void as a violation of the stay, that the subsequent sale of the Property to the Duran Defendants should be set aside, that Greenstein should be restored to ownership of the Property, and that she should be compensated for injuries resulting from the stay violation (collectively, "Stay Violation Claim").  *See* FAC at 9-22, 63-65.  These are the same claims asserted in the Set Aside Motion, which the Court has denied for the reasons set forth in Section IV. *supra*.

If the Court accepts as true all of the factual allegations regarding the Stay Violation, it would not reach a different conclusion than it has with respect to the Set Aside Motion.  The Court has concluded the In Rem Order is not void for lack of jurisdiction, is not void as a violation of Greenstein's due process rights and is not subject to collateral attack.  As a result, the Property was not subject to the automatic stay, Wells Fargo's foreclosure and subsequent sale of the property did not violate the stay, and Greenstein is not entitled to any relief based on the alleged stay violation.

For these reasons, the Court must dismiss the Stay Violation Claim for failure to state a claim upon which relief can be granted.  This dismissal is with prejudice because further amendment would be futile.

**b.     Fraud and Related Claims.**

Greenstein asserts claims for fraud.  These claims may be broken down into three different categories: (i) a claim for fraud/deceit, (ii) a claim for constructive fraud, and (iii) a claim for fraud

40

on the court.  *See generally* FAC at 22-53.  Greenstein also asserts claims for "perjury," *id.* at 58-59, and "presenting false evidence," *id.* at 61.  Because these claims are essentially the same as the claim asserted for "fraud on the court," they are addressed below, together with the claim for fraud on the court.

### (1)    Fraud/Deceit

Greenstein claims that she was the victim of fraud perpetrated by the Defendants ("Fraud Claim").  *See generally* FAC at 22-39.  Under California law, the "elements of fraud, which give rise to the tort action for deceit, are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." *Conroy v. Regents of University of California*, 45 Cal. 4th 1244, 1255 (2009).  In order to satisfy these requirements, the plaintiff must "actually [rely] on the alleged misrepresentations." *Id.*at 1256.

> Actual reliance occurs when a misrepresentation is an immediate cause of [a plaintiff's] conduct, which alters his legal relations, and when, absent such representation, he would not, in all reasonable probability, have entered into the contract or other transaction.  It is not … necessary that [a plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. . . . It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision.

*Id.* (citations and quotations omitted).  The Fraud Claim fails because Greenstein does not describe facts that, if true, would entitle her to recover against the Wells Fargo Defendants.  Virtually all of Greenstein's allegations regarding misrepresentations pertain to what Wells Fargo or one of its representatives allegedly said to a court, not what they said to Greenstein.[17]  The handful of

_____

[17] Greenstein's allegations regarding fraud on the court are separately addressed in Section V.A.3.b(3) *infra*.

**AMENDED MEMORANDUM OF DECISION**

1    statements that she alleges were specifically made *to her* are insufficient to support the Fraud

2    Claim.

3        First, she alleges that on July 6, 2010, a Wells Fargo representative told her by telephone he

4    would look into the status of a "Notice of Intent to Foreclose" that she received in the mail, and

5    advise other offices not to take any action toward foreclosure while he was investigating the matter.

6    FAC at ¶ 44.  She alleges that prior to this conversation—at an unspecified date or time—an

7    unidentified representative of Wells Fargo told her to ignore the notice.  Without any temporal

8    allegations whatsoever, Greenstein also describes conversations with Wells Fargo representatives

9    suggesting (i) that the foreclosure was proceeding because there was no record of Greenstein being

10   on an unemployment forbearance plan (which she seems to have believed), but (ii) that Wells

11   Fargo "wanted to work out payments so that Plaintiff could stay in her home and get current."  *Id.*

12       Greenstein fails to allege (a) facts showing that these statements were false at the time they

13   were made (with the possible exception of the statement she should ignore the notice of

14   foreclosure) or (b) how any of these statements induced her reasonable, detrimental reliance.

15   Greenstein alleges that "Despite the promises of Wells Fargo, N.A., it was, indeed, moving

16   forward, unbeknownst to Plaintiff, toward foreclosing on Plaintiff's home." *Id.* at ¶ 46.  But she

17   does not allege how she specifically relied on these statements, why such reliance was reasonable,

18   and how she was harmed by her reliance.

19       Indeed, Greenstein refers in the same paragraph to the filing of her First State Complaint,

20   by which she sought to stop the non-judicial foreclosure of her home by Wells Fargo.  *Id.; see also*

21   Adv. Dkt. 36-1 at 35.  By filing that complaint, and obtaining a temporary restraining order from

22   the state court enjoining Wells Fargo from conducting the foreclosure, *see* Ex. B to FAC,

23   Greenstein shows that she was able to timely seek judicial intervention from the state court prior to

24   the foreclosure, notwithstanding any statements by Wells Fargo that it might not proceed with the

25   foreclosure.  In other words, these allegations contradict, rather than support, Greenstein's

26   contention that she was harmed by Wells Fargo's allegedly conflicting statements regarding its

27   intention to foreclose.

28

**AMENDED MEMORANDUM OF DECISION**

Second, Greenstein alleges that in an email exchange dated July 20, 2012—nine days after foreclosure of the Property—Dean Reeves, counsel to Wells Fargo, represented that Wells Fargo "would take no action toward gaining possession of plaintiff's property due to her contention that the Grant Deed was false/fake unless Wells Fargo Bank, N.A. had a court order allowing it or an agreement was reached between Plaintiff, her bankruptcy trustee and Wells Fargo Bank, N.A." FAC at 6. Greenstein attaches the email as Exhibit H to the First Amended Complaint.

Greenstein alleges that approximately five months later, on December 24, 2012, Wells Fargo filed an unlawful detainer action to obtain possession of the Property, *id.* at 7, but she does not allege facts establishing that (i) the July 20, 2012, email statement was a misrepresentation, (ii) Reeves knew it was false at the time, (iii) Reeves made the statement to induce Greenstein's reliance in some way, (iv) Greenstein actually relied on Reeves' statement and was justified in doing so, and (v) Greenstein was damaged as a result of that reliance. In addition, the July 20, 2012, email exchange attached to the First Amended Complaint, and other judicially noticeable facts, indicate that a fraud claim based on Reeves' statement is not plausible.

The July 20, 2012, email exchange reveals that the chapter 7 trustee, Nancy Zamora, then believed that she was entitled to reverse Wells Fargo's foreclosure and sell the Property herself, for the benefit of the estate. *Id.* at 6. This is the context in which Reeves indicated that Wells Fargo would temporarily forebear eviction activities pending a court order or stipulation of the parties. But the docket indicates that Zamora subsequently abandoned her position—and that Greenstein knew of Zamora's change in position—at least as early as October 1, 2012, which is months before the unlawful detainer proceeding was commenced.

On June 28, 2012, Zamora filed a "Notice of Asset Case" indicating her expectation that the case would result in a dividend to unsecured creditors. Case Dkt. 23. On July 12, 2012, Zamora filed an application to employ a real estate broker to market the Property. Case Dkt. 28. But on October 1, 2012, Greenstein filed her *Motion to Compel Trustee to Protect Property of the Estate*, arguing that Zamora had "failed, refused and neglected to seek reversal of the improper sale and this is to the prejudice of the estate and the moving party." Case Dkt. 56. Greenstein testified in her supporting declaration that Zamora was now saying she could not sell the Property without the

43

1    permission of Wells Fargo.  *Id.* at 3.  Zamora confirmed her change in position by filing a *Notice of*

2    *Trustee's Intent to Abandon Real Property and Personal Property* with respect to the Property, on

3    October 4, 2012, Case Dkt. 58, and her Chapter 7 Trustee's Report of No Distribution on October

4    17, 2012.

5          Even earlier, on August 20, 2012, Greenstein commenced her First Adversary Proceeding.

6    The complaint in that proceeding sought, among other things, an injunction against Wells Fargo

7    "from attempting to remove Plaintiff from her house based on the improper sale of it in violation of

8    the automatic stay in her bankruptcy." Case 1:12-ap-01300-AA, Adv. Dkt. 1 at 6.  That complaint

9    was dismissed, but on October 24, 2012, Greenstein commenced her Second Adversary

10   Proceeding, wherein she again sought an injunction against her eviction from the Property.  *See*

11   Case No. 1:12-ap-01379-AA, Adv. Dkt. 1 at 7.

12         All of these circumstances demonstrate that Greenstein did not actually rely to her

13   detriment on the representation contained in Reeves' July 20, 2012, email indicating that Wells

14   Fargo would not seek to obtain possession of the foreclosed Property until the dispute over

15   Zamora's right to sell the property was resolved.  Wells Fargo did not seek to obtain possession of

16   the Property until December 24, 2012.  Long before that time, Greenstein had learned that Zamora

17   no longer asserted she could sell the Property on behalf of the estate, filed a motion seeking to

18   compel Zamora to do something to preserve the Property for the estate, and filed multiple

19   adversary proceedings seeking to enjoin Wells Fargo from seeking possession of the Property.  As

20   such, Greenstein's fraud claim based on Reeves' July 20, 2012, email is not plausible.

21         For all these reasons, Greenstein's claim for fraud or deceit will be dismissed with

22   prejudice.  The Court finds that permitting additional pleading of this claim would be futile.

23                       **(2)**    **Constructive Fraud**

24         Based on the identical facts and circumstances on which she bases her fraud claim,

25   Greenstein contends that she is the victim of constructive fraud by Wells Fargo and its

26   representatives.  "Unlike *actual fraud*, constructive fraud depends on the existence of a fiduciary

27   relationship of some kind, and this must be alleged."  *Younan v. Equifax Inc.*, 111 Cal. App. 3d

28   498, 516-517 (1980) (original emphasis).  "The elements of the cause of action for constructive

44

1  fraud are: (1) fiduciary relationship; (2) nondisclosure (breach of fiduciary duty); (3) intent to

2  deceive, and (4) reliance and resulting injury (causation)." *Id.* at 516 n.14.  "[T]he elements of a

3  representation and falsity, are absent from constructive fraud. The fraud consists of the breach of

4  the fiduciary duty of disclosure of relevant matters arising from the relationship." *Id.* at 517.

5        Greenstein's claim for constructive fraud not only fails to address the elements of this cause

6  of action, but also in substance fails to allege facts showing that each of these elements can be

7  satisfied.  Greenstein does not allege any fiduciary relationship between her and Wells Fargo, and

8  does not identify any intentionally deceptive non-disclosure by Wells Fargo that would have

9  resulted in a breach of its fiduciary duties.  Greenstein's allegations revolve around (i) alleged

10  misrepresentations Wells Fargo and its representatives made to Greenstein (addressed in the

11  preceding section on fraud/deceit), and (ii) alleged misrepresentations Wells Fargo and its

12  representatives made to various courts (addressed in the following section on fraud on the court).

13  The First Amended Complaint does not allege facts that would satisfy the requirements of a

14  constructive fraud.

15        For these reasons, Greenstein's claim for constructive fraud will be dismissed with

16  prejudice.  The Court finds that permitting additional pleading of this claim would be futile.

17              **(3)    Fraud on the Court, Perjury and False Evidence**

18        The balance of the fraud allegations in the First Amended Complaint pertain to statements

19  made and material presented by Wells Fargo to various courts.  Greenstein claims that these

20  statements and materials were false, perjurious and/or constituted the presentation of false

21  evidence.  She argues that this conduct caused her harm, i.e., the loss of her home to foreclosure

22  and the loss of the equity she otherwise might have realized through a bankruptcy sale.  The

23  problem is that there is no private right of action based on any of these alleged harms.

24        Under California law, there is no private right of action for "fraud upon the court." *See*

25  *Whitty v. First Nationwide Mortg. Corp.*, 2007 U.S. Dist. LEXIS 12988 at *29-*30 (S.D. Cal.

26  February 26, 2007) (citing *Cedars-Sinai Medical Center v. Superior Court*, 18 Cal. 4th 1, 9

27  (1998)).  In California courts, fraud on the court may be a basis for relief from a judgment, *id.* at

28  *30 (citing *Olivera v. Grace*, 19 Cal. 2d 570, 575 (1942)), but California courts repeatedly have

1   limited the availability of tort claims for litigation-related misconduct.  For instance, the California

2   Supreme Court has held that there is no civil remedy in damages against a witness who commits

3   perjury when testifying.  *See Cedars-Sinai Medical Center v. Superior Court*, 18 Cal. 4th at 9-10

4   (citing *Taylor v. Bidwell*, 65 Cal. 489 (1884)).  Relying on *Taylor*, one decision of the California

5   Court of Appeal later held that there can be no tort action for the concealment or withholding of

6   evidence.  *Agnew v. Parks*, 172 Cal. App. 2d 758, 756-57 (1959).

7            Other Court of Appeal decisions have rejected attempts, under a variety of legal theories, to

8   seek damages for the presentation of false evidence.  *See Mercury Casualty Co. v. Superior Court*,

9   179 Cal. App. 3d 1027, 1034-35 (1989) (rejecting fraud action based on allegations that insurer of

10  opposing party in underlying action had presented false testimony in that action); *Rios v. Allstate*

11  *Ins. Co.*, 68 Cal. App. 3d 811, 817-19 (1977) (rejecting insured's action for bad faith alleging that,

12  in arbitration between insurer and insured, insurer had presented false evidence and testimony in

13  the action); *Kachig v. Boothe*, 22 Cal. App. 3d 636, 640-41 (1971) (rejecting action for fraud and

14  intentional infliction of emotional distress arising out of prior judgment that rested on false

15  testimony and false documentary evidence).[18]

16           Likewise, the court has not located any case recognizing a federal right of action for

17  damages resulting from a fraud on the court, perjury or the presentation of false evidence.  *See*

18  *Coultas v. Payne*, 2016 U.S. Dist. LEXIS 22215 (D. Or. 2016); *Whitty*, 2007 U.S. Dist. LEXIS

19

---

20  [18] Additionally, Section 47(b)(2) of the California Civil Code provides that statements made in
    judicial proceedings are privileged.  Cal. Civ. Code § 47(b)(2).  The so-called "litigation privilege"
21  immunizes litigants from tort liability arising from communications made during judicial
    proceedings. . . ."  *Silberg v. Anderson*, 50 Cal. 3d 205, 214 (1990).  For the privilege to apply, the
22  communication must be "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other
    participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some
23  connection or logical relation to the action."  *Id.* at 365.  "A bankruptcy proceeding is a judicial
    proceeding within the scope of California's litigation privilege."  *Nilsen v. Neilson (In re Cedar*
24  *Funding, Inc.)*, 419 B.R. 807, 825 (9th Cir. B.A.P. 2009).  As detailed below, the statements
    complained of were made by Wells Fargo's counsel during the course of legal proceedings in and
25  out of this Court, in which Wells Fargo was litigating with Greenstein.  All of the statements
    complained of pertain to the existence and legal effect of the Lipkis Deed, which purports to
26  transfer an interest in the Property from Greenstein to Lipkis.  These statements were clearly made
    by litigants, aimed at achieving the objects of the litigation, and have some connection or logical
27  relation to the proceeding.

28

---

46

**AMENDED MEMORANDUM OF DECISION**

12988 at *38-*39; *see also Levy v. San Joaquin County Dep't of Child Support Servs.*, 2013 U.S.
Dist. LEXIS 64526 at *19-*20 (holding that although perjury is a crime there is no private right of
action for perjury); *Najarro v. Wollman*, No. C12-01925 PJH, 2012 U.S. Dist. LEXIS 75032 (N.D.
Cal. May 30, 2012) (the claims of "obstruction of laws," "obstruction of justice," and "perjury"
dismissed because there is no private right of action on any of these claims).   Under federal law,
fraud on the court is an equitable doctrine justifying the setting aside of a federal judgment.  *See*
*United States v. Stonehill*, 660 F.3d 415, 443-444 (9th Cir. 2011) *(citing Chambers v. NASCO, Inc.*,
501 U.S. 32, 44 (1991)); *see also* Fed. R. Civ. P. 60(b)(3) (judgment may be set aside based on
fraud on the court, misrepresentation or other misconduct by an opposing party).

Accordingly, to the extent that Greenstein seeks damages for an alleged fraud on the court,
perjurious testimony, or the presentation of false evidence, she cannot state a claim upon which
relief can be granted, because no such cause of action exists under state law or federal law.  To the
extent Greenstein seeks to vacate a prior court judgment based on such grounds, her complaint
likewise fails, as explained below.

The Ninth Circuit has explained that "[b]ecause the power to vacate for fraud on the court
'is so great, and so free from procedural limitations,' 11 Wright & Miller § 2870, we have held that
"not all fraud is fraud on the court." *Stonehill*, 660 F.3d at 444 (citing *In re Levander*, 180 F.3d
1114, 1119 (9th Cir. 1999)).  "In determining whether fraud constitutes fraud on the court, the
relevant inquiry is not whether fraudulent conduct prejudiced the opposing party, but whether it
harmed the integrity of the judicial process." *Id. (quoting Alexander v. Robertson*, 882 F.2d 421,
424 (9th Cir. 1989)) (quotations omitted).  "Fraud on the court involves 'far more than an injury to
a single litigant.'" *Id.* (*citing Hazel-Atlas Glass Co. v. Hartford-Empire Co*. 322 U.S. 238, 246
(1944)).

"Fraud on the court" should, we believe, embrace only that species of fraud which
does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the
court so that the judicial machinery cannot perform in the usual manner its impartial
task of adjudging cases that are presented for adjudication.

1  *In re Intermagnetics America, Inc.*, 926 F.2d 912, 916 (9th Cir. 1991) (quoting 7 J. Moore & J.

2  Lucas, Moore's Federal Practice ¶ 60.33, at 515 (2d ed. 1978)).

3      Although the First Amended Complaint contains much repetition, it essentially alleges five

4  instances in which Wells Fargo or its representatives committed fraud on a court by

5  misrepresenting facts, presenting false evidence and/or perjuring themselves.  The first instance is

6  the alleged misrepresentation of Wells Fargo attorney Dean Reeves to the California Superior

7  Court, in proceedings on the First State Complaint, that he was in possession of the Lipkis Deed.

8  *See, e.g.,* FAC at 28.  Shortly after the Case Management Conference in which Reeves referenced

9  the Lipkis Deed, Greenstein alleges Reeves showed her the Lipkis Deed and "plaintiff immediately

10  declared the purported Grant Deed a forgery." *Id.*  Greenstein further alleges that she subsequently

11  investigated the Lipkis Deed and at various times shared with Wells Fargo lawyers evidence that

12  the Lipkis Deed was a forgery.

13      But these allegations do not entitle Greenstein to relief.  First, Greenstein has provided no

14  legal authority enabling this Court to grant relief from a state court judgment based on a fraud on

15  the court.  Federal Rule of Civil Procedure 60(b)(3) only confers authority on this Court to grant

16  relief from its own orders.  Second, Greenstein has not identified any state court judgment from

17  which she presently seeks relief.  To the extent Greenstein alleges that Reeve's representations

18  provided the basis for any relief in the California Superior Court, she suggests that her prior

19  counsel relied on Reeves' representations in stipulating to the state court's limited jurisdiction.  *See*

20  FAC at 4-5.  Greenstein also acknowledges, however, that her case was subsequently returned to

21  the unlimited jurisdiction of the state court.  *See id.* at 6; Ex. G to the FAC.  In other words,

22  Greenstein identifies no order of the state court, resulting from these alleged misrepresentations,

23  from which she now requires relief.

24      The second instance of fraud on the court alleged by Greenstein occurred when Wells

25  Fargo's attorney Marisol Nagata (together with Lipkis' attorney, Steven Wolvek) presented the

26

27

28

**AMENDED MEMORANDUM OF DECISION**

stipulated In Rem Order in the Lipkis Case. *See* FAC at 31-32, 61.[19]  Greenstein alleges that at the

time the In Rem Order was signed on behalf of Wells Fargo, the bank had been given "substantial

proof that the [Lipkis Deed] was, in fact, a fake." *Id.* at 33.  Further, Greenstein claims that Wells

Fargo's counsel (i) failed to disclose to the Court that "[the Property] was not listed in the

bankruptcy nor that Roger Lipkis did not claim any interest therein, and that the property was

owned by Plaintiff" and (ii) "never advised the Lipkis court of the existence of the alleged [Lipkis

Deed]." *Id.* at 34.

The representations contained in the In Rem Order are set forth in a continuation page

appended to the Court's form relief from stay order:

It is further stipulated and agreed as follows.

a. That Debtor asserts no interest in the subject property commonly known

as 5160 Llano Drive, Woodland Hills, California 91364-2902.

b. That an interest in the Property was impermissibly transferred to the

Debtor without the knowledge of the Debtor. Without Debtor's consent, his Chapter

13 bankruptcy case proceeding is being used for an improper purpose as part of a

scheme to delay, hinder and defraud creditors that involved a transfer of all or part

ownership of, or interest in the Llano Property without the consent of this Movant or

court approval.

c. That the Order shall be binding and effective despite any conversion of

this bankruptcy case to a case under any other chapter of Title 11 of the United

States Code.

d. That entry of the order approving this Stipulation Terminating the

Automatic Stay shall also not be considered an Order Terminating the Automatic

---

[19] As set forth in Section V.B *infra*, Greenstein's claims against Wolvek and Nagata individually
are barred by the doctrine of *res judicata*.  To the extent Nagata may be deemed to have been
acting on behalf of Wells Fargo in respect of the representations ascribed to her, the Court finds it
appropriate to address the sufficiency of these allegations.

**AMENDED MEMORANDUM OF DECISION**

1        Stay pursuant to 11 U.S.C. § 109(g)(2) in the unlikely event that Debtor chooses to

2        voluntarily dismiss his Chapter 13 case.

3 Case No. 1:11-bk-23430-MT, Dkt. 28 at 5.

4        Even if all of Greenstein's allegations are accepted as true, the foregoing representations by

5 counsel for Wells Fargo (and counsel for Lipkis) do not rise to the level of a fraud on the Court.

6 Although these representations do not specifically reference Lipkis' bankruptcy schedules, they do

7 indicate that Lipkis disclaimed any interest in the Property.  Thus, although they do not specifically

8 identify Greenstein as the owner of the Property, the inescapable inference from these

9 representations is that someone *other than Lipkis* is the rightful owner the Property.  Further,

10 although they do not specifically identify the Lipkis Deed, they do reference an unauthorized

11 transfer of the Property to Lipkis.

12        Greenstein nevertheless insists that the parties' representation that the Property had been

13 "transferred" was false and misleading because (i) the Lipkis Deed was a forgery, (ii) the Lipkis

14 Deed did not effectively transfer an interest in property to Lipkis, and (iii) Greenstein had advised

15 Wells Fargo of facts supporting the foregoing conclusions.  Accepting these allegations as true,

16 they do not amount to a fraud on the court.

17        Bankruptcy courts routinely grant relief under Bankruptcy Code section 362(d)(4) where a

18 deed "purports" to transfer an interest in property to a debtor, as part of scheme to hinder, delay or

19 defraud a creditor.  *See, e.g., In re Dorsey*, 476 B.R. at 266; *In re 4th St. E. Inv'rs, Inc.*, 474 B.R. at

20 711.  A deed that *purports* to transfer a property interest to a debtor will be effective in delaying a

21 pending foreclosure sale because of its mere existence, regardless of whether it is *actually* effective

22 in transferring an interest in property.  A lender that receives such a deed—whether it is genuine or

23 fake—typically will stop all foreclosure activity and seek relief from the bankruptcy court, rather

24 than risk violating the automatic stay.  Typically, in a highjacked case scenario, the lender proffers

25 evidence that the subject grant deed was not authorized by the lender, and the debtor disclaims any

26 interest in the subject property.  Because courts are able to infer from these facts that there is a

27 scheme to hinder, delay or defraud the lender, and because relief from stay proceedings are

28 summary in nature, courts frequently grant relief under section 362(d)(4) without adjudicating

**AMENDED MEMORANDUM OF DECISION**

1    precisely who prepared the grant deed and whether the grant deed was legally effective in

2    transferring an interest in property.

3    　　　　Thus, even if it is assumed that the Lipkis Deed is a forgery, and Wells Fargo's counsel

4    knew of facts suggesting as much, failure to disclose those facts in the stipulation would not

5    constitute a fraud on the court.   Under these circumstances, the better practice would have been to

6    specifically reference the Lipkis Deed, describe it as a *purported* transfer of an interest in the

7    Property, and disclose the known issues surrounding its authenticity.   But the failure of counsel to

8    disclose this information would not constitute a fraud that "defile[s] the court itself" or that renders

9    the "judicial machinery [unable to] perform in the usual manner its impartial task of adjudging

10   cases."   *See In re Intermagnetics America, Inc.*, 926 F.2d at 916.   These details would give the

11   Court a more fulsome understanding of the circumstances presented, but would not likely change

12   the outcome.   To the contrary, the prospect that the Lipkis Deed was a forgery would likely provide

13   additional support for the conclusion that there was a scheme afoot to hinder and delay Wells

14   Fargo's foreclosure efforts by abusing the automatic stay in the Lipkis case.   Accordingly,

15   Greenstein is not entitled to relief from the In Rem Order based on the representations made by

16   Wells Fargo (and Lipkis) in that order.

17   　　　　The third instance of fraud on the court alleged by Greenstein occurred when Wells Fargo's

18   attorney, Dean Reaves, stated in a pleading in support of a motion to dismiss the First Adversary

19   Proceeding, as follows:

20   　　　　　　On the eve of the trustee's sale for the subject property, Wells Fargo's designated

21   　　　　　　trustee received by fax a copy of the Lipkis Grant Deed as well as notification that

22   　　　　　　Mr. Lipkis [has] filed for bankruptcy protection. . . .   As result the trustee's sale is

23   　　　　　　postponed so as not to violate the automatic stay.

24   FAC at 60, *quoting* Case No. 1:12-ap-01300-AA, Adv. Dkt. No. 18 at 3-4.   Greenstein contends

25   that this statement was "false testimony" by Reeves.   *Id.* at 60.

26   　　　　But these allegations do not establish a cause of action against Reeves or Wells Fargo.   The

27   only remedy for presenting false testimony or committing fraud on the court is to set aside the

28   order procured by such conduct.   In this instance, Greenstein complains about a statement made in

51

**AMENDED MEMORANDUM OF DECISION**

1    a brief supporting dismissal of the First Adversary Proceeding.  *Id.* at 60.[20]   The order dismissing

2    the First Adversary Proceeding ultimately was granted on November 1, 2012 and Greenstein did

3    not appeal.  Case No. 1:12-ap-01300-AA, Adv. Dkt. 22.  Unlike other statements with which

4    Greenstein quarrels, this statement does not speak to the efficacy of the Lipkis Deed.  It simply

5    states that Wells Fargo received the Lipkis Deed shortly before a scheduled trustee's sale and

6    thereafter postponed the sale.  Greenstein contends that this is "false testimony" because Reeves

7    "knew that the sale was postponed due to a Temporary Restraining Order."  But there is no

8    connection between this allegedly false statement and the Court's dismissal of the First Adversary

9    Proceeding.  As set forth in the dismissal order, the First Amended Complaint was dismissed for

10   lack of standing, an entirely unrelated issue.  *See id.*

11        The fourth and fifth instances of fraud on the court alleged by Greenstein occurred in

12   connection with her appeal to the BAP from the original order denying the Set Aside Motion.

13   Greenstein complains that in Wells Fargo's opening brief, attorney Robert C. Little stated, "A grant

14   deed appeared to be recorded against the property transferring title from Greenstein to Roger

15   Lipkis," and later stated, "It was later determined that the property had been transferred to Lipkis

16   without his knowledge or Wells Fargo Bank, N.A.'s consent and that Lipkis' Chapter 13 bankruptcy

17   was being used as part of a scheme."  FAC at 36-37.  Greenstein also complains that attorney

18   Robert A. Bailey misrepresented material facts to the BAP at oral argument, when he gave an

19   equivocal answer to a question regarding whether the Lipkis Deed had been recorded.

20        As a basis for establishing a fraud on the court, these allegations suffer the same infirmities

21   as those based on the representations in the stipulated In Rem Order.  But more importantly, these

22   allegations do not pertain to any court order that this Court has any power to set aside.  Federal

23   Rule of Civil Procedure 60(b)(3) does not give this Court authority to set aside an order of the

24

---

25   [20] Greenstein attributes this alleged misrepresentation to Reeves, but a different attorney
representing Wells Fargo, Matthew Pero, actually signed the pleading.  *See* Case No. 1:12-ap-
26   01300-AA, Adv. Dkt. No. 18 at 5.  Nevertheless, because Pero was representing Wells Fargo, the
Court believes it is appropriate to address the sufficiency of these allegations vis-à-vis a claim
27   against Wells Fargo.

28

**AMENDED MEMORANDUM OF DECISION**

1  BAP.  Moreover, the appeal in which these allegedly false statements were made was resolved *in*

2  *favor of Greenstein* when it was vacated and remanded for further proceedings.  Accordingly, these

3  allegations do not amount to a claim for fraud on the court, or any other cause of action.

4         Finally, in addition to her allegations regarding statements made to various courts regarding

5  the effect of the Lipkis Deed, Greenstein alleges that the Chief Executive Officer of Wells Fargo,

6  John Stumpf, with the assistance of unnamed accomplices, (i) "physically created" the Lipkis Deed

7  and (ii) "put together a scheme to block and bypass any automatic stay plaintiff would receive in a

8  bankruptcy she might file, which would stop Wells Fargo Bank, N.A. from continuing with a

9  foreclosure it had started on her property."  These allegations are so implausible as to warrant

10 dismissal under *Twombly* and *Iqbal*.

11        At the time the Lipkis Deed materialized, Wells Fargo was pursuing its foreclosure of the

12 Property without the impediment of a bankruptcy by Greenstein.  *See* FAC at 4, 28-29.  That

13 anyone at Wells Fargo (let alone its CEO John Stumpf) would fabricate the Lipkis Deed to deprive

14 Greenstein of her rights in an as-yet unfiled bankruptcy makes no sense.  The appearance of such a

15 deed in the Lipkis case would stall Wells Fargo's foreclosure and require it to seek relief from the

16 automatic stay.  Wells Fargo obtained that relief pursuant to the stipulated In Rem Order.  Pursuant

17 to the terms of section 362(d)(4), the relief accorded Wells Fargo under the In Rem Order was

18 reviewable by the court presiding over any future case involving the Property.

19        In other words, by obtaining the In Rem Order, it was impossible for Wells Fargo to

20 permanently deprive Greenstein of the protection of the automatic stay, if she subsequently filed a

21 bankruptcy case.  Under the statute, Greenstein was entitled to relitigate the applicability of the stay

22 in her case to the Property, as soon as she filed a bankruptcy case.  That she failed to do so timely

23 was fortuitous for Wells Fargo, but was not a guaranteed result.  Thus, it is not plausible that Wells

24 Fargo would fabricate the Lipkis Deed, stall its own foreclosure activities, and incur the cost of

25 obtaining a section 362(d)(4) order, rather than simply waiting for Greenstein to file a bankruptcy

26 case and thereafter seeking relief from the automatic stay.

27

28

**AMENDED MEMORANDUM OF DECISION**

1    For these reasons, Greenstein's claims for fraud on the court, perjury, and the presentation

2  of false evidence will be dismissed with prejudice and without leave to amend.  The Court

3  concludes that these claims cannot be remedied by additional pleading.

4                    **c.        Emotional Distress and Personal Injury**

5    The First Amended Complaint alleges a claim for "emotional distress and personal injury."

6  *See* FAC at 53-55.  According to Greenstein, the events described in the complaint resulted in a

7  litany of emotional and physical problems for Greenstein.  She alleges "Defendants knew their

8  actions detailed in this complaint would cause plaintiff the harm detailed or should have reasonably

9  known it and this was their intent, basically to emotionally and physically beat plaintiff down so

10  she could not fight them on their illegal actions."  *Id.* at 53-55.  The Court construes these

11  allegations as an attempt to plead intentional infliction of emotional distress under California law.

12    A cause of action for intentional infliction of emotional distress exists when there is

13  (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless

14  disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or

15  extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the

16  defendant's outrageous conduct.  *Hughes v. Pair*, 46 Cal. 4th 1035 (2009) (internal quotations

17  omitted) (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993) and

18  *Christensen v. Superior Court,* 54 Cal.3d 868, 903 (1991)).  A defendant's conduct is "outrageous"

19  when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community."

20  *Id.* at 1001 (*quoting Potter*, 6 Cal. 4th at 1001).

21    Greenstein's allegations are inadequate to state a claim for intentional infliction of

22  emotional distress.  The central problem is that she fails to plead any "extreme and outrageous

23  conduct" that would satisfy the first element of this cause of action.  The gravamen of the

24  complaint is that Wells Fargo obtained the In Rem Order and deprived Greenstein of the automatic

25  stay with respect to the Property.  Pursuant to Bankruptcy Code section 362(d)(4), she had an

26  opportunity to seek relief from that order and impose the automatic stay, but failed to request that

27  relief until after the Property had been foreclosed upon and was no longer property of her

28  bankruptcy estate.

1   For these reasons, Greenstein's claim for intentional infliction of emotional distress will be

2   dismissed with prejudice.  The Court finds that permitting Greenstein to replead this claim would

3   be futile.

4   **d.    Quiet Title**

5   The First Amended Complaint seeks to quiet title to the Property.  *See* FAC at 55-58.

6   Greenstein alleges that unknown persons claim an unspecified interest in the Property that is

7   adverse to the claim of ownership by Greenstein.  She further alleges that interests in the property

8   became vested in these unknown persons "when, on information and belief, they purchased the

9   property from Wells Fargo Bank, N.A. which [held] (sic) an invalid title to the property due to the

10  facts alleged against it in this complaint."  *Id.* at 57.  In other words, Greenstein seeks a

11  determination that she is the owner of the Property because the In Rem Order was invalid and the

12  foreclosure by Wells Fargo was a violation of the automatic stay.  As discussed in Section IV.C

13  *supra*, Greenstein has litigated these issues in the Set Aside Motion and the Court has rejected her

14  arguments.  Greenstein cannot allege a plausible claim that entitles her to ownership of the

15  Property.  Repleading will not remedy this defect.

16                                          * * *

17  Accordingly, the Court will enter a separate order DISMISSING WITH PREJUDICE the

18  First Amended Complaint against the Wells Fargo Defendants.

19  **B.    Nagata and Wolvek**

20  Nagata and Wolvek argue that the First Amended Complaint (i.e., in the Third Adversary

21  Proceeding) should be dismissed because the claims asserted against them are barred by the

22  doctrine of claim preclusion.  The Court agrees.  Greenstein's essential claim against Nagata and

23  Wolvek is that Greenstein suffered damages as a result of allegedly false statements they made to

24  the Court by way of the stipulated In Rem Order.  This claim was asserted in the Second Adversary

25  Proceeding, which was dismissed for failure to state a claim, without leave to amend, by orders

26  entered on December 26 and 27, 2012.  *See* Case No. 1:12-ap-01379-MB, Adv. Dkt. 25, 26.

27  Greenstein did not appeal these orders.  This is also the same claim Greenstein asserted against

28  Nagata and Wolvek in the Second State Complaint.  *See* Adv. Dkt. 36 at Ex. L.  On December 20,

**AMENDED MEMORANDUM OF DECISION**

1  2013, the California Superior Court granted demurrers to the Second State Complaint without leave

2  to amend.  *See id.*, Ex. M.  It appears Greenstein did not appeal these rulings either.[21]

3       The preclusive effect of the orders dismissing Nagata and Wolvek from the Second

4  Adversary Proceeding is determined under federal law.  *Taylor v. Sturgell*, 553 U.S. at 891.  All

5  three requirements for claim preclusion under federal law are satisfied.  *See Owens*, 244 F.3d at

6  713.  First, the claims asserted against Nagata and Wolvek in the Second Adversary Proceeding are

7  the same claims asserted against them in the First Amended Complaint.  Second, dismissal of the

8  Second Adversary Proceeding for failure to state a claim, without leave to amend, constitutes a

9  final judgment on the merits.  Third, the same parties are involved in both proceedings.

10  Accordingly, the First Amended Complaint against Nagata and Wolvek is barred under the federal

11  doctrine of claim preclusion.

12       The preclusive effect of the orders dismissing the Second State Action is determined under

13  California law.  *See Furnace*, 838 F.3d at 1023.  All three requirements for claim preclusion under

14  California law are satisfied.  *Citizens for Open Gov't v. City of Lodi*, 205 Cal. App. 4th at 324.

15  First, the claims asserted against Nagata and Wolvek in the Second State Complaint are the same

16  claims asserted against them in the First Amended Complaint.  Second, the granting of demurrers

17  without leave to amend constitutes a final judgment under California law.  *Boeken*, 48 Cal. 4th at

18  793; *Palomar Mobilehome Park Ass'n*, 989 F.2d at 364.  Third, the same parties are involved in

19  both proceedings.  Accordingly, the First Amended Complaint against Nagata and Wolvek is

20  barred under the California doctrine of claim preclusion.

21       Accordingly, the Court will enter separate orders DISMISSING WITH PREJUDICE the

22  First Amended Complaint against Nagata and Wolvek.

23       **C.**    **Duran Defendants**

24       The body of the First Amended Complaint mentions the Duran Defendants twice, only to

25  state that they purchased the Property from Wells Fargo.  This sole allegation is insufficient to

26

27  [21]  *See supra* note 10.

28

**AMENDED MEMORANDUM OF DECISION**

1   support any cause of action against the Duran Defendants.  To the extent Greenstein named the

2   Duran Defendants because one of the causes of action is to quiet title to the Property—an inference

3   on the part of the Court[22]—the Duran Defendants nevertheless must be dismissed.  As explained in

4   Section V.A.3.d *supra*, Greenstein's argument that she is entitled to ownership of the Property is

5   premised on her contentions that the In Rem Order was invalid and the foreclosure of the Property

6   a violation of the automatic stay.  Greenstein has litigated these issues in the Set Aside Motion and

7   the Court has rejected her arguments.  *See supra* Section IV.C.  There is no plausible claim that

8   Greenstein can assert against the Duran Defendants and leave to amend would be futile.

9          Accordingly, the Court will enter a separate order DISMISSING WITH PREJUDICE the

10  First Amended Complaint against the Duran Defendants.

11              **VI.    MOTION TO STRIKE AND SANCTIONS**

12          In addition to their motion to dismiss for failure to state claims on which relief can be

13  granted, the Wells Fargo Defendants have filed a special motion to strike plaintiffs' state law claims

14  for relief under California's anti-SLAPP statute and for an award of sanctions against Greenstein in

15  the amount of $2,887.50.  *See* Adv. Dkt. 35.  Cal. Code Civ. Proc, § 425.16.  This statute enables a

16  court to strike claims that constitute "Strategic Lawsuits against Public Participation" or "SLAPPs".

17  *Batzel v. Smith*, 333 F.3d 1018, 1023-24 (9th Cir. 2003).  These are lawsuits that "masquerade as

18  ordinary lawsuits," but are brought to deter common citizens from expressing their political or legal

19  rights or to punish them for doing so.  *Id.*at 1024.  Because California law recognizes the protection

20  of the anti-SLAPP statute as a substantive immunity from suit, this Court recognizes that immunity

21  with respect to claims based on California law.  *Id.* at 1025.  However, because the Court is

22  dismissing all of the state law claims in the First Amended Complaint, against all of the

23  Defendants, for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the

24  Court concludes that the Motion to Strike is moot.  *See, e.g., McMillen v. Chaker,* 2017 U.S. Dist.

25  

26  [22] As noted in Section V.A.3.d *supra*, Greenstein's quiet title allegations state that the owners of the Property against whom she is seeking relief are unknown.  First Amended Complaint at 55-58.

27  This is obviously in contradiction with the allegations that identify the Durans as the purchasers.

28

1   LEXIS 139020 at *14; *Burnett v. Twentieth Century Fox Film Corp.,* 491 F. Supp. 2d 962, 974

2   (C.D. Cal. 2007); *Phillips v. Seattle Times Co.,* 818 F. Supp. 2d 1277, 1286-87 (W.D. Wa. 2011).

3   Because the entirety of the First Amended Complaint is being dismissed, there are no claims to

4   strike.

5      Accordingly, the Court will enter a separate order DENYING AS MOOT the Motion to

6   Strike.

### VII.   VEXATIOUS LITIGANT REQUEST

8      In conjunction with defendant Steven Wolvek's motion to dismiss, he seeks a vexatious

9   litigant order enjoining Laurel Greenstein from filing any further actions against Wolvek based on

10  similar facts or issues without first obtaining leave of court (the "Vexatious Litigant Request").

11  Adv. Dkt. 32.  For the reasons discussed below, the Vexatious Litigant Request is denied.

12     Federal courts have the authority to regulate the conduct of abusive litigants by imposing

13  carefully tailored restrictions under appropriate circumstances.  *Ringgold-Lockhart v. Cty. Of Los*

14  *Angeles*, 761 F.3d 1057, 1061 (9th Cir. 2014).  One such restriction is provided by the All Writs

15  Act, 28 U.S.C. § 1651(a), which permits a court to enjoin filing by litigants with abusive and

16  lengthy litigation histories.  *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990).

17     Based on the constitutional underpinnings of the general right to court access, "'pre-filing

18  orders should rarely be filed,' and only if courts comply with certain procedural and substantive

19  requirements.'"  *Ringgold-Lockhart*, 761 F.3d at 1062 (quoting *De Long v. Hennessey*, 912 F.2d at

20  1147).  "Courts should not enter pre-filing orders with undue haste because such sanctions can

21  tread on a litigant's due process right of access to the courts."  *Molski v. Evergreen Dynasty Corp.*,

22  500 F.3d 1047, 1057 (9th Cir. 2007).  Further, courts should exercise particular caution before

23  using such measures against a *pro se* plaintiff.  *See Pavilions v. King*, 626 F.2d 1075, 1079 (1st Cir.

24  1980) (cited with approval in *De Long*, 912 F.2d at 1147).

25     A court seeking to impose a pre-filing injunction on a party must: "(1) give litigants notice

26  and 'an opportunity to oppose the order before it is entered'; (2) compile an adequate record for

27  appellate review, including 'a listing of all the cases and motions that led the district court to

28  conclude that a vexatious litigant order was needed'; (3) make substantive findings of frivolousness

**AMENDED MEMORANDUM OF DECISION**

or harassment; and (4) tailor the order narrowly so as 'to closely fit the specific vice encountered.'"
*Ringgold-Lockhart*, 761 F.3d at 1062 (quoting *De Long*, 912 F.2d at 1147-48).  The first two facts
are procedural; the second two are substantive.

Before a court issues a pre-filing injunction, it must make substantive findings of
frivolousness or harassment by a litigant.  *Ringgold-Lockhart*, 761 F.3d at 1064.  Courts must make
these findings in light of both the *number* and *content* of the filings—either one on its own is
insufficient:

> While we have not established a numerical definition for frivolousness, we have
> said that even if a litigant's petition is frivolous, the court must make a finding that
> the number of complaints was inordinate.  Litigiousness alone is not enough either:
> The plaintiff's claims must not only be numerous, but also be patently without merit.

*Id.* (internal quotations and citations omitted).

The two substantive factors help define "vexatious litigant" and "construct a remedy that
will stop the litigant's abusive behavior while not unduly infringing the litigant's right to access the
courts."  *Molski*, 500 F.3d at 1058.  The Ninth Circuit Court of Appeals has held that a five-factor
test used in the Second Circuit "provides a helpful framework for applying the two substantive
factors."  *Id.* (applying *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)); *see also Ringgold-
Lockhart*, 761 F.3d at 1062.  The *Safir* factors are as follows:

(1) the litigant's history of litigation and in particular whether it entailed vexatious,
   harassing or duplicative lawsuits;

(2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective
   good faith expectation of prevailing?;

(3) whether the litigant is represented by counsel;

(4) whether the litigant has caused needless expense to other parties or has posed an
   unnecessary burden on the courts and their personnel; and

(5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir*, 792 F.2d at 24.

**AMENDED MEMORANDUM OF DECISION**

1    Wolvek argues that Greenstein should be declared a vexatious litigant because the

2    adversary proceeding at bar is the "fifth adversary proceeding against [Wolvek] on the same set of

3    facts." Adv. Dkt. 32.  Wolvek contends that Greenstein's claims have been frivolous and that the

4    multiplicity of actions she has commenced has been harassing.  Wolvek's analysis, however,

5    (i) rests on an inadequate description of the procedural history and (ii) does not adequately account

6    for the all of the legal factors this Court must consider in making a vexatious litigant determination.

7    The first proceeding Wolvek identifies is not itself an adversary proceeding, but instead a

8    series of motions filed in the Lipkis case.  Greenstein filed her motion to set aside the In Rem Order

9    on August 7, 2012, amended it on August 14, 2012, and thereafter filed a motion for contempt.

10   Case No. 1:11-bk-23430-MT, Dkt. 43, 44, 45.  The motions were denied on the basis that the

11   "adversary proceeding filed by Movant [was] the proper mechanism to address Movant's

12   complaints." *Id.*, Dkt. 50, 51, 52.

13   The next three proceedings Wolvek identifies are adversary proceedings: (1) the First

14   Adversary Proceeding, filed on August 20, 2012, and dismissed on October 24, 2012, on the basis

15   that Greenstein lacked standing as a chapter 7 debtor to assert the claims in her complaint, (2) the

16   Second Adversary Proceeding, filed on October 24, 2012, and dismissed on December 26, 2012,

17   without leave to amend for failure to state a claim upon which relief could be granted, and (3) the

18   Third Adversary Proceeding, in which the original complaint was filed on October 6, 2015, and

19   dismissed on December 15, 2015, and in which the First Amended Complaint was thereafter filed

20   on February 19, 2016.  Notably, Wolvek was not named as a defendant in the original complaint in

21   the Third Adversary Proceeding, *see* Adv. Dkt. 1, but was named as a defendant in the First

22   Amended Complaint.

23   The fifth proceeding Wolvek identifies is the Second State Complaint filed in the California

24   Superior Court on August 15, 2013, and thereafter dismissed without leave to amend on December

25   20, 2013.  Adv. Dkt. 36 at Ex. L, M.

26   Greenstein is proceeding pro se to remedy what she believes was the wrongful foreclosure

27   of her home of approximately twenty years.  She has alleged in all of these proceedings that

28   Wolvek harmed her when he made certain false representations to the Court that resulted in entry

60

1    of the In Rem Order.  That Greenstein has repeated this allegation in multiple proceedings—and

2    has been unsuccessful in any obtaining relief—does not mean that her commencement of these

3    proceedings has been abusive.   The Court finds that she has been aggressively pursuing her rights,

4    and at times has been misguided in her efforts, but the Court is not prepared to conclude that her

5    conduct towards Wolvek has been vexatious.

6         Greenstein started with motions seeking relief from the In Rem Order in the Lipkis case.

7    The Court denied those motions approximately four months later, because Greenstein had in the

8    meantime commenced adversary proceedings seeking the same relief, among other forms of relief,

9    against a series of parties.  Greenstein's course of conduct was by no means efficient.  But it does

10   not appear to the Court to be a pattern of abuse.  Greenstein could not have asserted in a motion all

11   of the relief that she ultimately sought in her adversary proceedings.  That she figured this out after

12   the Lipkis motions had been filed, and commenced an adversary proceeding before the Lipkis

13   motions had been ruled upon, reflects a lack of legal experience, but an effort nonetheless to

14   comply with the Court's procedural rules.  Thus, though there were multiple proceedings

15   commenced, the Court does not believe it is appropriate to count them as duplicative and harassing.

16        Likewise, that there have been three adversary proceedings does not compel such a

17   conclusion either.  The First Adversary Proceeding was not dismissed on the merits, but instead

18   because Greenstein lacked standing.  Once she obtained standing, she commenced the Second

19   Adversary Proceeding.  That proceeding ultimately was dismissed with prejudice for failure to state

20   a claim, but that dismissal was the first time Greenstein's claim against Wolvek was actually

21   adjudicated on the merits by this Court.  Greenstein thereafter commenced the Third Adversary

22   Proceeding, but her original complaint in that action named only Wells Fargo.  It did not name

23   Wolvek as a defendant.

24        Wolvek was added to the Third Adversary Proceeding only after the Court dismissed the

25   original complaint with leave to amend.  The Court explained at that time that any subsequent

26   complaint would need to contain specific factual allegations identifying the "who, what, how and

27   when" of Greenstein's fraud allegations.  The First Amended Complaint filed in response to that

28   ruling contained additional information, but it also renamed Wolvek as a defendant (as well as

61

**AMENDED MEMORANDUM OF DECISION**

other individual defendants).  To be sure, the Court did *not* invite Greenstein to rename a defendant that the Court had already dismissed with prejudice.  It appears, however, that Greenstein misconstrued the Court's instructions to provide greater detail in her amended complaint regarding the persons that allegedly committed a fraud against her, and the specific conduct for which each of those persons were responsible.

All that being said, the Court is not aware of any explanation for Greenstein's filing of the Second State Complaint after the Court dismissed the Second Adversary Proceeding.  Greenstein's complaint against Wolvek in the state court was doomed from the very start because it contained the same claims against Wolvek that were rejected by the Court in its dismissal of the Second Adversary Proceeding.  The Court concludes, however, that the filing of the Second State Complaint is insufficient alone to justify the imposition of a pre-filing injunction that restricts Greenstein's access to this Court.  Indeed, even if the Court is wrong in its assessment of the reasons why Greenstein named Wolvek in the First Amended Complaint, the Court is not persuaded that these two proceedings alone are sufficient to constitute a series of "frivolous" or "harassing" proceedings.

The Court recognizes that these proceedings have imposed a burden on Wolvek, but a pre-filing injunction is not justified under the circumstances.  If Greenstein commences a new proceeding in this Court asserting the same claims against Wolvek that already have been dismissed, the matter can be remedied with a short and succinct motion from Wolvek requesting dismissal on res judicata grounds.  Based on the current state of affairs, the Court believes that this would be an adequate remedy.  If Greenstein does commence a new proceeding in this Court asserting the same claims against Wolvek, the Court can reconsider at that time the issue of vexatious litigant relief.

62

**AMENDED MEMORANDUM OF DECISION**

# VIII.   CONCLUSION

For all the foregoing reasons, the Court will enter separate orders (i) DENYING the Set Aside Motion; (ii) GRANTING the Motions to Dismiss, as to the Wells Fargo Defendants, Nagata, Wolvek, and the Duran Defendants, and DISMISSING WITH PREJUDICE the First Amended Complaint; (iii) DENYING AS MOOT the Motion to Strike; and (iv) DENYING the Vexatious Litigant Request.

Date: October 31, 2017

Martin R Barash
United States Bankruptcy Judge

63

**AMENDED MEMORANDUM OF DECISION**